Richard JONE, et al., Appellant,

v.

COLEMAN COMPANY, Respondent.

No. ED 85710.

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 20, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 24, 2006.

Application for Transfer Denied
Feb. 28, 2006.

James Parker Lemonds, St. Louis, MO, for appellant.

Daniel T. Rabbitt Jr., St. Louis, MO, for respondent.

BOOKER T. SHAW, Judge.

Richard Jone ("Jone") and, decedent, Caryieng Lam ("Lam")[1] (Jone and Lam shall collectively be referred to as "Plaintiffs") appeal the jury verdict in favor of the Coleman Corporation ("Coleman") in a suit for damages for personal injury, wrongful death and products liability. Plaintiffs raise five points on appeal claiming the trial court erred by: (i) submitting an affirmative converse instruction to the jury; (ii) allowing Coleman to argue the lantern in question was defective; (iii) admitting into evidence warnings on a tent label; (iv) rejecting Plaintiffs' evidence of similar incident reports; and (v) granting summary judgment to Coleman on the issue of punitive damages. We affirm in part and reverse and remand for a new trial.

The facts are as follows: Jone, an experienced camper, and Lam, Jone's nephew, went on a camping trip to hunt on property located in Canton, Missouri on October 9, 1999. After pitching a brand new tent, they went hunting. They returned to the campsite for dinner. Plaintiffs then went to sleep in the tent with both "windows" of the tent open. Around 11:00 p.m., they woke up cold. Plaintiffs lit a propane-fueled lantern ("Lantern") to warm the tent, but kept the "windows" to the tent open. The two men went back to sleep.

The next morning, Jone woke up and tried to wake Lam. When Lam failed to respond, Jone discovered that Lam had died of what was later determined to be carbon monoxide poisoning. Jone suffered significant injuries. He was taken to the hospital where he received treatment for carbon monoxide poisoning.

The source of the carbon monoxide was the propane-fueled Lantern. Coleman did not manufacture the Lantern, but did manufacture the propane cylinder that fueled the Lantern. The Lantern was purchased sometime in 1982 by Jone. No warnings appeared on the Lantern. Jone testified that he and Lam had used the Lantern many times. On occasion the wick would not stay lit and propane would hiss out of the Lantern. He further testified that Lam lit the Lantern on this night and there were no problems in lighting the Lantern. Additionally, the Lantern was working as it had previously, in that it burned bright and was giving off heat. Jone replaced the propane cylinder for the Lantern almost yearly. Jone testified that he replaced the glass globe on the Lantern at one time but no other modifications had been made to the Lantern. At the time of the accident, the Lantern had a crack in the glass globe.

At trial, Plaintiffs asserted claims against Coleman for (i) failure to warn based on strict product liability alleging that the propane cylinder was sold without warning of the dangers of carbon monoxide; and (ii) negligence in that Coleman knew of the danger posed by carbon monoxide when propane is burned inside a tent and negligently failed to warn users of the danger by selling the propane cylinder without an adequate warning.

---

1. Lam's mother was the original plaintiff in this lawsuit against Coleman. Before trial, she died and her estate's personal representative was named in her place.

Coleman contended at trial that (i) the Lantern was defective and not used in a reasonably foreseeable manner; (ii) Coleman did not have a duty to warn of the dangers of another manufacturer's products; and (iii) the new tent used by Plaintiffs had a specific carbon monoxide warning. Coleman did not raise comparative fault at trial. The jury returned a verdict for Coleman. The trial court denied Plaintiffs' motion for a new trial. This appeal follows.

In Plaintiffs' first point on appeal, they argue the trial court erred in submitting to the jury Instruction Numbers 9, 11, 15, and 17 described in M.A.I. 33.05(1) because it was an affirmative converse instruction. Instruction Number 9[2] stated the following:

### INSTRUCTION No. 9

Your verdict must be for defendant if you believe plaintiff Richard Jone used a Coleman propane canister with a faulty lantern which emitted excessive carbon monoxide.

The verdict directors as offered by Plaintiffs read as follows:

### INSTRUCTION No. 8

In verdict A on the claim of plaintiff Richard Jone[3] for personal injury based upon product defect, your verdict must be for the plaintiff Richard Jone if you believe:

First, defendant Coleman sold the propane canister in the course of defendant's business and

Second, the propane canister was then unreasonably dangerous when put to a reasonably anticipated use without knowledge of its characteristics, and

Third, defendant Coleman did not give an adequate warning of the danger, and

Fourth, the product was used in a manner reasonably anticipated, and

Fifth, such propane canister being sold without an adequate warning directly caused or directly contributed to cause damage to plaintiff Richard Jone.

### INSTRUCTION No. 10

In verdict A on the claim of plaintiff Richard Jone[4] for personal injuries based upon negligence, your verdict must be for plaintiff Richard Jone if you believe:

First, defendant Coleman manufactured the propane canister, and

Second, burning propane contained in the propane canister posed the hazard of carbon monoxide poisoning, and

Third, defendant Coleman failed to use ordinary care to adequately warn of the risk of harm from carbon monoxide, and

Fourth, such failure directly caused or directly contributed to cause damage to plaintiff Richard Jone.

2. This instruction is the same as 11, 15, and 17 except to the extent the Plaintiffs' names are changed.

3. This instruction was modeled after M.A.I. 25.05. A similar instruction was given for product defect for Lam's wrongful death claim modeled after M.A.I. 25.05 (modified), M.A.I. 20.01 (modified) and M.A.I. 19.01 (modified).

4. This instruction was modeled after M.A.I. 25.09 (modified) and M.A.I. 19.01 (modified). A similar instruction was given for negligence for Lam's wrongful death claim modeled after M.A.I. 25.09 (modified), M.A.I. 19.01 (modified), and M.A.I. 20.01 (modified).

## I. Affirmative Converse Instructions

 A judgment will be reversed because of instructional error if the error materially affected the merits and outcome of the case. *See Gorman v. Wal–Mart,* 19 S.W.3d 725, 730 (Mo.App. W.D.2000). The party claiming instructional error has the task of showing that the instruction misdirected, misled, or confused the jury. *Id.*

 Here, Instruction No. 9 is an affirmative converse instruction. "An affirmative converse instruction must submit a hypothesized ultimate fact issue which, if true, negates plaintiff's claim." *Hiers v. Lemley,* 834 S.W.2d 729, 734 (Mo. banc 1992). Its use is appropriate where the verdict director assumes as true or omits a disputed ultimate issue. *Id.* A defendant may submit its theory of the case through the use of such an instruction. *See Hiller v. Diestelhorst,* 820 S.W.2d 522, 524 (Mo. App. E.D.1991). However, "the defendant must then produce independent evidence supporting those facts submitted in the instruction, and the facts must be sufficient in law to defeat plaintiff's claim." *Id.* (citing *Tierney v. Berg,* 679 S.W.2d 919, 921 (Mo.App. E.D.1984)).

 The affirmative converse instruction, although an approved M.A.I. instruction, has generally been disfavored by Missouri courts and for good reason. The instruction tends to resemble a prohibited sole cause instruction, it often is a resubmission of the issues found in the verdict director, and it tends to mislead the jury. *See Hiers,* 834 S.W.2d at 735–36 (and citing cases); *see also* Elwood L. Thomas, *Converse Instructions Under M.A.I.,* 42 Mo. L.Rev. 175–206 (1977) (noting that for defendants there is one fail-safe method for avoiding error in converse instructions:

"Do not use the affirmative converse instruction").

### A. Coleman's Evidence was Insufficient to Defeat Plaintiff's Claim.

 Our initial inquiry in this appeal is whether Coleman's independent evidence was sufficient to support submitting this affirmative converse instruction to the jury, i.e., whether there was substantial evidence the Lantern was "faulty" and therefore caused the death of Lam and the injuries to Jone. We hold that it was not. In considering whether an instruction was supported by the evidence, we view all of the evidence in the light most favorable to the party offering the instruction, here Coleman, and give the party the benefit of all favorable inferences reasonably drawn therefrom. *See Maxwell v. City of Hayti,* 985 S.W.2d 920, 922 (Mo.App. S.D.1999).

Coleman relies on the testimony of its former executive and expert, Randy May, to support its hypothesized ultimate issue—the Lantern was "faulty" and emitted excessive carbon monoxide. Randy May's testimony revealed the following: Coleman was aware that lanterns are used by campers as both a heat and a light source. Coleman was aware that its propane cylinders were used on other manufacturers' appliances and they were designed with a universal fitting for this reason. Additionally, Coleman was aware that most campers use and keep their equipment for many years and are able to replace propane cylinders as needed, and to replace or fix parts as needed, such as a glass globe.

Until the summer of 1997, Coleman allowed consumers to use its camping lanterns indoors with "ample ventilation." In October of 1997, Coleman advised consumers not to use its lanterns in small enclosures including tents and campers.[5] Cole-

---

5. The propane canister in question was manufactured in September 1997. There was no evidence regarding when Jone purchased the canister.

man had decided, in part, to change its warnings on its propane canisters after it became aware of deaths and injuries resulting from carbon monoxide poisoning through the use of its products. Coleman developed the new warning label in June 1997, but did not begin attaching the new warning label to its propane canisters until October of 1997—when the supply of its previous labels were depleted.[6] Randy May's testimony also revealed that there was no realistic way for a camper to know if a lantern is emitting an excessive amount of carbon monoxide in that carbon monoxide is completely undetectable. Further, a camper would not suspect that a lantern was emitting excess carbon monoxide if it is working dependably and giving off light and heat.

Randy May testified that upon first seeing this Lantern, he knew that it had been modified, altered, or changed from its original design in that there was no spacing or gap between the globe and the ventilator to allow the exhaust to escape. At the request of Coleman, May designed a testing protocol for the Lantern. Plaintiffs approved the protocol. The testing revealed that a quarter inch gap was required between the glass globe and the ventilator to allow the Lantern to "function" without emitting fatal amounts of carbon monoxide. May's ultimate opinion regarding the Lantern was, in pertinent part, as follows:

> [Coleman's Counsel]: In your work in this case and based on the experience that you have given ... some options as to why you believe that the [Lantern] produced high levels of carbon monoxide ... were you able to sort one from the other ...

6. The propane canister involved in this accident contained the following warning on the canister:

> DANGER: Extremely flammable-contents under pressure.
> WARNING: AVOID FIRE AND INJURY.
> ·KEEP OUT OF REACH OF CHILDREN.
> ·Always read and follow appliance instructions.
> ·Always inspect cylinder and appliance propane connections....
> ·Always attach or detach cylinder outdoors away from flame, pilot lights, and only when appliance is cool to touch. Screw cylinder into appliance hand tight.
> ·Replace protective cap on cylinder after detaching cylinder from appliance....
> · Do not use if cylinder or appliance has been damaged or modified. Do not refill cylinder. Do not puncture or replace in fire.
> · All burning products consume oxygen. Ample ventilation must be provided to avoid endangering your life.
> · Federal law forbids transport on passenger aircraft and trains.

The new warning label used by Coleman beginning in October of 1997 had the following warning:

> DANGER
> · EXTREMELY FLAMMABLE
> · · FIRE/EXPLOSION HAZARD
> · CONTENTS UNDER PRESSURE
> · CARBON MONOXIDE HAZARD
> CARBON MONOXIDE HAZARD
> Burning propane can make Carbon Monoxide (CO). CO is invisible, has no smell and can kill you. Burning propane in a tent, camper, van or other enclosed area can be dangerous. Use only in well-ventilated areas. If you experience headache, drowsiness, or nausea, turn unit off and get fresh air quickly. Never use when sleeping. Follow appliance instructions for proper use.
> HANDLING & STORAGE
> 1. Keep out of reach of children.
> 2. Do not expose to heat, sparks, or flame. Do not leave in direct sunlight. Do not store at temperatures above 120° F.
> 3. Never store in living spaces.
> 4. Always use cylinder stand with top mounted camping appliances to prevent tip over.
> 5. Never refill this cylinder. Refilling may cause explosion. Federal law forbids transportation if refilled....
> 6. Never put in luggage or take on trains or aircraft.
> 7. To discard, contact local refuse hauler or recycle center. Never put in fire or incinerator. Do no puncture.

[Randy May]: No, not really.... I know that there had been parts replaced, apparently. I understand he had replaced the glass globe at one point, I believe. And I can't sit here today and tell you specifically, what's missing on the [L]antern or what's been modified. All I can tell you is what I've already told you. My opinion, there's parts missing....

Reviewing the record and transcript, Randy May's testimony was insufficient to support the affirmative converse instruction in this case. Throughout May's testimony, he never testified that the Lantern was "faulty" or even "defective" but only that the Lantern had been modified. According to May, Coleman expected its consumers to modify or change parts on its camping products. In fact, Coleman sells many different parts so that campers do not have to buy, for example, a brand new lantern when a globe cracks or a knob falls off. Coleman also was aware that many indoor and outdoor products use propane cylinders. We find that Coleman did not meet its burden in presenting independent evidence to support its hypothesized issue of fact that the Lantern was "faulty." Further, Coleman's evidence did not establish that its warning was not a contributing cause in Plaintiffs' injuries. *See Nesselrode v. Executive Beechcraft, Inc.*, 707 S.W.2d 371 (Mo. banc 1986) (noting that a product may be rendered unreasonably dangerous and therefore actionable because of the absence of a warning concerning use or misuse, or because the warning that has been given is informationally deficient); *see Shepard v. Ford Motor Company*, 457 S.W.2d 255, 258–59 (Mo.App.1970) (noting that defendant's evidence did not support the hypothesized fact and there-

fore, did not refute plaintiff's case); and *In re Coots*, 877 S.W.2d 245, 249 (Mo.App. W.D.1994) (noting the instructional error could have kept the jury from reaching the issue of fault at all).

**B. Instruction No. 9 Confused and Misled the Jury.**

■ In addition to our finding that Coleman's evidence did not defeat Plaintiff's claim, we also find that this instruction confused and misled the jury.[7] The instruction was in essence a sole cause instruction. It instructed the jury that if it found the Lantern to be "faulty," then it could not find Coleman in any way responsible for the cause of the injuries and death despite a less than perfect warning. In other words, this instruction misled the jury to believe that there could be only one cause for the death and injuries of Plaintiffs. Moreover, the instruction did not allow the jury to reach the crux of the case: whether Coleman failed to warn of the dangers of carbon monoxide on its propane canister when used in a reasonably foreseeable manner.

The jury was allowed to disregard the verdict director in one of two ways. First, if the jury found that the Lantern was "faulty," it could not find that using this Lantern was a reasonably anticipated use by Plaintiffs. Second, if the jury found that the Lantern was "faulty," it could not find that the propane canister's warning or lack thereof could have "directly contributed" to the death and injuries of Plaintiffs. *See Gerow v. Mitch Crawford Holiday Motors*, 987 S.W.2d 359, 362 (Mo.App. W.D.1999) (noting that the source of the original or intervening cause [here, the Lantern] is irrelevant so long as plaintiff's particular use of the product, [here, the

---

**7.** This Court finds it prudent to further address this instruction, in the event Coleman would resubmit this issue in a proper instruc-

tion, after presenting additional evidence regarding the Lantern at the new trial.

propane on a less than perfect Lantern], is reasonably foreseeable.) Essentially, this instruction allowed Coleman a complete legal defense against the claims of Plaintiffs if the jury found the Lantern to be "faulty" at all, whether or not such "fault" caused or contributed to cause any damages.

The instruction also was confusing because of the adjective "faulty." Both parties admitted that the Lantern emitted fatal or excessive amounts of carbon monoxide that resulted in injuries to Jone and death to Lam. Plaintiffs argue that the word "faulty" should have been defined because otherwise it gave the jury a roving commission. *See Seitz v. Lemay Bank and Trust Co.*, 959 S.W.2d 458, 463 (Mo. banc 1998) (noting that a roving commission allows the jury to "roam freely through the evidence and choose any facts which suited its fancy or its perception of logic"). Plaintiffs argue persuasively that the word "faulty" could have meant a number of things to the jury. The jury could have found that the Lantern was "faulty" because it was old, rusty, or that the glass globe had been cracked. The jury could have also determined that "faulty" was a synonym for "emitted excessive carbon monoxide."

Ordinarily, the word "faulty" would be considered a commonly used word that is easily understood by jurors. *See Brock v. Firemens Fund of Am. Ins. Co.*, 637 S.W.2d 824, 827 (Mo.App. E.D.1982). The dictionary defines "faulty" as "marked by fault, blemish, or defect: Imperfect." *See Webster's New Collegiate Dictionary* 418 (8th ed.1978). However, in a products liability action, "faulty" may be construed as a technical term warranting a definition.

This is true especially in light of Coleman's technical expert's testimony regarding a lantern's design, use, and parts. In addition, Plaintiffs conceded the Lantern was "imperfect" in that it was rusty, old and had a crack in the glass globe, but that it "worked" the way Plaintiffs would expect a Lantern to work in that it burned brightly and emitted heat.[8] Plaintiffs' claim against Coleman was that Coleman failed to warn against the known hazards of carbon monoxide and that the Lantern was used in a reasonably foreseeable manner by Plaintiffs, regardless of the Lantern's imperfections. Due to the confusing affirmative converse instruction, the jury was unable to reach this issue. Point granted. Our reasoning in Point I disposes of the issue raised in Point II. Plaintiffs' remaining points on appeal may reoccur on retrial. Therefore, this Court will address these three additional points.

## II. Admissibility of the Tent Warning

In Plaintiffs' third point, they argue the trial court erred in admitting the contents of the tent warning and tent brochure, which were not manufactured by Coleman, because they were not relevant. Evidence is not relevant unless it tends to prove or disprove a fact in issue or if it tends to corroborate other relevant evidence. *State ex rel. Webster v. Missouri Resource Recovery, Inc.*, 825 S.W.2d 916, 942 (Mo.App. S.D.1992). Even if evidence is relevant, if its probative value is outweighed by it prejudicial effect, its admission may constitute an abuse of discretion. *See Stevinson v. Deffenbaugh Indus., Inc.*, 870 S.W.2d 851, 860 (Mo.App. W.D.1993). The trial court has broad discretion to admit or exclude evidence at trial, and its

---

**8.** It appears from the record that the trial judge believed that Plaintiffs conceded that the Lantern was "faulty." From our reading of the record, Plaintiffs did not concede this and showed that while the Lantern was old, rusty, and in a "used" condition, it was not faulty in that it was working as a camper would expect it to work.

decision will be affirmed absent a clear abuse of discretion. *See, Thornton v. Gray Automotive Parts Co.*, 62 S.W.3d 575, 583 (Mo.App. W.D.2001). "An abuse of discretion occurs when the trial court's ruling is clearly against the logic of the circumstances then before the trial court, and is so unreasonable and arbitrary that the ruling shocks the sense of justice, and indicates a lack of careful deliberate consideration." *Bowman v. McDonald's Corp.*, 916 S.W.2d 270, 276 (Mo.App. W.D. 1995). Even if that threshold is met, this Court will only reverse if the error resulted in a material effect upon the merits. *See Thornton*, 62 S.W.3d at 583.

■■ The tent warning was read to the jury twice and referred to in closing argument. The warning provided:

### WARNING

■■ KEEP ALL FLAME
AND HEAT SOURCES
AWAY FROM THIS TENT FABRIC

· This tent is made with flame resistant fabric which meets CPAI–84 specifications. It is not fire proof. The fabric will burn if left in continuous contact with any flame source.

· The application of any foreign substance to the tent fabric may render the flame resistant properties ineffective.

· All fuel burning products use air. Lack of fresh air can cause poor combustion and deadly carbon monoxide. Never use fuel burning products in tent without providing fresh air into the area. Never use heaters or other fuel burning products while sleeping.

Coleman contends that the tent warning is relevant to show that even if its propane canister had the new label attached to it, Plaintiffs would not have read it. This contention is illogical as it equates two products that are completely dissimilar,

both as to character and usage. A tent is basically a benign collection of fabric and rods, used for shelter. A propane canister contains a combustible gas used for, *inter alia*, light, heat and cooking and is considered a "hazardous substance" within the Federal Hazardous Substances Act. *See* 15 U.S.C. Section 1261(f) (2000). Clearly, the latter is potentially more dangerous than the former. Plaintiffs' alleged failure to read the warning label on one does not "tend to prove" Plaintiffs would not have read the other. *See Missouri Resource Recovery, Inc.*, 825 S.W.2d at 942–43.

The fact remains that the manufacturer of an inherently dangerous product has a duty to warn ultimate users. *Duke v. Gulf & Western Manufacturing Co.*, 660 S.W.2d 404, 418 (Mo.App. W.D.1983). Here, Coleman seeks to lessen its duty by introducing a separate warning from a disparate product manufactured by a different company. The issue in this case was the adequacy of Coleman's warning label on a propane canister, not whether Plaintiffs could have read and relied upon a different warning from an entirely different product. Without evidence showing that Plaintiffs read and disregarded the tent warning, the tent warning is irrelevant. We find that this evidence confused the jury and prejudiced the Plaintiff by minimizing Coleman's duty to warn of carbon monoxide poisoning *on its product. See Gulf & Western Manufacturing Co.*, 660 S.W.2d at 416 (noting evidence that someone other than defendant had duty to provide guards to make the product safe introduces a false fact issue and does not obviate defendant's own duty to make product safer). Point III is granted.

### III. Admissibility of the CPSC Reports

■■ In Plaintiffs' fourth point, they argue the trial court erred in rejecting Plaintiffs' offer of proof regarding twenty-

six Consumer Product Safety Commission ("CPSC") incident reports pertaining to carbon monoxide deaths and injuries because these reports were relevant to the issue of Coleman's duty to warn specifically of the hazards of carbon monoxide. The trial court, relying on *Thornton,* denied Plaintiffs' offer of proof because CPSC reports concerned incidents that involved "no ventilation" and were not substantially similar to this case. "In products liability cases, evidence of an accident similar in nature to that which injured the plaintiff is admissible provided the evidence is relevant and sufficiently similar to the injury-causing incident so as to outweigh the concerns of undue prejudice and confusion of the issues." *Id.* at 583. *Thornton* sets forth the test in determining whether an occurrence is similar. Each occurrence must be (i) of like character; (ii) occur under substantially the same circumstances, and (iii) result from the same cause. *Id.*

After reviewing the CPSC reports, we do not find that the trial court abused its discretion. The reports reflect that in each of these incidences there was inadequate ventilation. Further, not all of the incidences occurred in a tent and the type and size of the propane canister involved in the incidences were different. While the CPSC reports involved deaths and injuries resulting from a propane appliance emitting fatal amounts of carbon monoxide, the relevance of this evidence to show that Coleman was on notice that its warning was inadequate in that it was aware that people have died from propane-fueled appliances inside small enclosures does not outweigh the prejudice to Coleman. The trial court did not abuse its discretion. Point IV is denied.

## IV. Punitive Damages

 In Plaintiffs' fifth point, they argue the trial court erred in granting Coleman summary judgment on Plaintiffs' claims for punitive damages. We disagree and find that without additional evidence to support punitive damages, they are not warranted in this case. Punitive damages are submissible in a case in which liability has been established by the negligence of the defendant where the evidence shows the defendant knew or had reason to know that there was a high degree of probability that the action would result in injury. *Hoover's Dairy, Inc. v. Mid-America Dairymen, Inc.,* 700 S.W.2d 426, 435-36 (Mo. banc 1985). In a products liability claim, the plaintiff must present evidence that the defendant placed an unreasonably dangerous product into the stream of commerce with actual knowledge of the defect. Under both negligence and strict liability theories, the plaintiff must demonstrate that the defendant showed a complete indifference to or conscious disregard for the safety of others. *Letz v. Turbomeca Engine Corp.,* 975 S.W.2d 155, 164-65 (Mo. App. W.D.1997). The test for punitive damages is a strict one, and many cases have been reversed because of a punitive damage award. *See Bhagvandoss v. Beiersdorf, Inc.,* 723 S.W.2d 392, 397 (Mo. banc 1987). Our Court's review of a trial court's grant of summary judgment is essentially de novo and the criteria on appeal for testing the propriety of summary judgment are no different from those that should be employed by the trial court initially. *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993).

Our review of the record does not support a claim for punitive damages. Here, Coleman's propane canister did include a warning. While the warning does not specifically use the words "carbon monoxide," the warning does allude to carbon monoxide by noting that using a propane-fueled appliance consumes oxygen and without

adequate ventilation may be a danger. This warning indicates that Coleman did not willfully or consciously disregard the safety of the consumers of its propane canisters. Point V is denied.

The judgment of the trial court is affirmed in part, and reversed in part and the case is remanded for a new trial.

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED.**

KATHIANNE KNAUP CRANE, P.J., and LAWRENCE E. MOONEY, J., concur.