**In the ESTATE OF George
J. GOLDSCHMIDT.**

**No. ED 87104.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 26, 2006.

Application for Transfer Denied
March 20, 2007.

Jonathan E. Fortman, John C. Kress, Attorney at Law, St. Louis, MO, for petitioner.

Thomas C. DeVoto, Robert J. Benbenek, Attorney's at Law, St. Louis, MO, for respondents.

GARY M. GAERTNER, SR., Judge.

Appellant, Edward C. Schoenbein ("Appellant"), the personal representative of the estate of George J. Goldschmidt ("Decedent"), appeals from the judgment of the Circuit Court of St. Louis County, following a jury trial, entered in favor of Decedent's sister-in-law, Respondent, Gladys M. Goldschmidt ("Respondent Goldschmidt"). In entering judgment in favor of Respondent Goldschmidt, the trial court: (1) ordered that, pursuant to the jury's verdict, Decedent's signatures establishing a payable on death account for Respondent Goldschmidt and her deceased husband, Archie Goldschmidt, are genuine, and (2) entered a directed verdict on Appellant's claims of undue influence and fraud. We affirm in part and reverse and remand in part.

Decedent executed his last will and testament in July of 1983 ("Decedent's Will"). Decedent's Will does not provide for any specific bequests. Decedent's Will provides for Decedent's residuary estate to be divided equally among his five siblings: Appellant, Archie Goldschmidt, Norbert Goldschmidt, Virginia Beis, and Dale Schoenbein. Archie Goldschmidt was appointed executor of Decedent's Will.

Decedent lived by himself. Sometime in the early 1980's, Decedent was declared legally blind and unable to drive a vehicle. After this occurred, Archie Goldschmidt and Archie's wife, Respondent Goldschmidt, would periodically visit Decedent to help him with his finances and buy him groceries.

Respondent Goldschmidt testified that on March 25, 1998, while she and Archie Goldschmidt were visiting Decedent, De-

cedent indicated that he wanted to go to the bank to establish a payable on death account. Respondent Goldschmidt and Archie Goldschmidt drove Decedent to NationsBank. At the bank, Decedent designated an existing account as a payable on death account ("the POD account"), naming Archie Goldschmidt and Respondent Goldschmidt as beneficiaries. The POD account contains the signatures of Decedent, Archie Goldschmidt, and Respondent Goldschmidt. In March of 1998, the amount in the POD account was approximately $70,000 to $80,000.[1]

Archie Goldschmidt passed away in 2001. Decedent passed away on March 11, 2004 at the age of 91.

According to Respondent Goldschmidt, between March of 1998 and Decedent's death in March of 2004, the amount in the POD account increased to over $500,000 as a result of Decedent's investments. On March 16, 2004, Respondent Goldschmidt went to Bank of America[2] with Decedent's death certificate and closed the POD account. On March 17, 2004, Bank of America issued a cashier's check to Respondent Goldschmidt in the amount of $507,710.10 ("the POD account funds").

Thereafter, Appellant became aware of the POD account. After Appellant petitioned the trial court, the court appointed him personal representative of Decedent's estate.

On October 12, 2004, Appellant filed a petition for temporary restraining order ("the TRO") seeking the court to prohibit Respondent Goldschmidt and her children, Respondents Richard Goldschmidt, Mark Goldschmidt, Barbara Weinhardt, and John Goldschmidt (collectively "Respondent Goldschmidt's children") from disposing of the POD account funds, which the trial court granted. On October 29, 2004, the court ordered the TRO would be extended if Appellant filed a $5,000 bond. Subsequently, the TRO expired because Appellant failed to post a bond.

On October 29, 2004, Respondent Goldschmidt and Respondent Goldschmidt's children filed a petition to determine title to property and for declaratory judgment against Appellant, which requested the court to, *inter alia*, declare that the POD account funds are an asset of Respondent Goldschmidt and not an asset of Decedent's estate.

On that same date, Appellant filed a petition to determine title to property against Respondent Goldschmidt and Respondent Goldschmidt's children, which requested the court to convey the POD funds to Decedent's estate. Appellant's petition claimed undue influence ("Count I"), actual fraud ("Count II"), constructive fraud ("Count III"), mental incapacity ("Count IV"), invalid gift ("Count V"), and conversion/trover ("Count VI"). Appellant thereafter requested the court for leave to file a first and second amended petition, which the trial court denied.

Appellant dismissed all claims against Respondent Goldschmidt's children. In addition, Appellant dismissed or withdrew Counts IV–VI of his petition against Respondent Goldschmidt.

At some point prior to the jury trial, Appellant asserted a claim alleging that Decedent's signatures on the POD account are not genuine. A jury trial took place from May 16–18, 2005. Appellant presented evidence to the jury on his remaining claims of undue influence, actual fraud,

---

1. Both parties stated in oral argument that this was the approximate amount in the POD account in March of 1998.

2. Sometime prior to March 16, 2004, NationsBank became Bank of America.

and constructive fraud. Respondent Goldschmidt presented, *inter alia*, testimony from a handwriting expert that Decedent's signatures establishing the POD account are genuine. Following the close of all the evidence, Respondent Goldschmidt filed a motion for directed verdict on Appellant's claims that the POD account was procured by undue influence or fraud, which the trial court granted.

Following deliberation, the jury returned a verdict finding that Decedent's signatures on the POD account are genuine. On May 31, 2005, the trial court entered judgment pursuant to the jury's verdict and entered a directed verdict on Appellant's claims of undue influence and fraud. Appellant filed a motion for new trial on June 30, 2005, which was deemed denied ninety days later under Rule 81.05(a)(2)(A). This appeal followed.

In his first point on appeal, Appellant contends the trial court erred in entering a directed verdict on his claim of undue influence.

In reviewing a trial court's judgment granting a defendant's motion for directed verdict, we must determine whether the plaintiff made a submissible case. *Hertz Corp. v. Raks Hospitality, Inc.*, 196 S.W.3d 536, 549 (Mo.App. E.D. 2006). In order to ascertain whether the plaintiff made a submissible case, we view the evidence and all reasonable inferences therefrom in the light most favorable to the plaintiff, and disregard all evidence to the contrary. *Id.* If a plaintiff fails to produce substantial evidence of one or more of the elements of a cause of action, he fails to make a submissible case. *Burke v. Kehr*, 876 S.W.2d 718, 721 (Mo. App. E.D.1994). A trial court may only grant a defendant's motion for directed verdict when the evidence and all reason-able inferences therefrom "are so strongly against the plaintiff as to leave no room for reasonable minds to differ." *Waggoner v. Mercedez Benz of N. America*, 879 S.W.2d 692, 694 (Mo.App. E.D.1994).

For a nonprobate transfer of property, the rights and obligations of the owner, beneficiary, and transferring entity are governed by sections 461.003, RSMo 2004 [3] to 461.081. Subsection 461.062.1; section 461.003. Sections 461.003 to 461.081 are referred to as the "Nonprobate Transfers Law of Missouri." Section 461.003. A "[n]onprobate transfer" is defined as "a transfer of property taking effect upon the death of the owner, pursuant to a beneficiary designation." Section 461.005(7). A "beneficiary designation" is "a provision in writing that is not a will that designates the beneficiary of a nonprobate transfer, including the transferee in an instrument that makes the transfer effective on death of the owner...." Section 461.005(2) (footnote omitted). An instrument or account record may make a transfer effective on the death of the owner if the phrase "pay on death to" or the abbreviation "POD" appears after the owner's name and before the designation of the beneficiary. Section 461.005(15). Thus, a POD account is a beneficiary designation.

We initially note that in this case the Nonprobate Transfers Law of Missouri applies because the document at issue in this case is the POD account, which contained the abbreviation "POD" after Decedent's name and before the designation of Archie Goldschmidt and Respondent Goldschmidt as beneficiaries.

Subsection 461.054.1 of the Nonprobate Transfers Law of Missouri provides that a POD account that is procured by undue influence is void. Subsection 461.054.1.

**3.** All statutory references are to RSMo 2004, unless otherwise indicated.

The term "undue influence" is generally defined as such overpersuasion, coercion, force, or deception that breaks the will power of the holder of assets and puts in its place the will of another. *Duvall v. Brenizer,* 818 S.W.2d 332, 335 (Mo. App. W.D.1991).

A presumption of undue influence arises where substantial evidence shows: (1) a confidential and fiduciary relationship; (2) that the fiduciary obtained a benefit; and (3) some additional evidence from which there is an inference of undue influence. *Estate of Gross v. Gross,* 840 S.W.2d 253, 257 (Mo.App. E.D.1992). When a presumption of undue influence is supported by substantial evidence, a submissible case is made and the case should go to the jury even if there is contrary evidence. *Id.* In determining whether a plaintiff has made a submissible case of undue influence, a case-by case analysis is usually required because the exercise of undue influence is often proved by circumstantial evidence. *Id.*

We will first consider whether there is substantial evidence that Respondent Goldschmidt and Decedent had a confidential and fiduciary relationship.

"Confidential" and "fiduciary" are virtually synonymous terms. *Id.* A confidential and fiduciary relationship exists when one relies upon and trusts in another to handle his property or business affairs. *Id.* at 257–58. Evidence to consider in determining whether there is a confidential relationship includes when another: (1) fills out checks for the holder of assets to sign or (2) helps the holder of assets with his taxes. *See Vancil v. Carpenter,* 935 S.W.2d 42, 45 (Mo.App. W.D.1996) (checks) and *Lesh v. Lesh,* 718 S.W.2d 529, 533 (Mo.App. E.D.1986) (taxes).

In this case, Respondent Goldschmidt testified that Decedent trusted her with his financial documents. For example, she filled out checks for Decedent to sign for the payment of his utility bills. Respondent Goldschmidt monitored all of Decedent's tax papers and took those documents to a tax preparer. Respondent Goldschmidt would tell Decedent the exact nature of each document he signed. In addition, Respondent Goldschmidt assisted Decedent with his insurance. She also obtained a key to Decedent's safety deposit box. The record reflects that most of the above assistance took place prior the time the POD account was established. We find that this collectively constitutes substantial evidence that Respondent Goldschmidt and Decedent had a confidential and fiduciary relationship.

Respondent Goldschmidt does not dispute that she received a benefit and therefore, the second prong is supported by substantial evidence. In fact, she received $507,010.10 at Decedent's death when she closed the POD account at Bank of America. Thus, we will now determine whether there is substantial, additional evidence from which there is an inference of undue influence.

Additional evidence includes the physical condition of the holder of the assets. *See Lopiccolo v. Semar,* 890 S.W.2d 754, 760 (Mo.App. E.D.1995) (finding this is a factor to consider in determining whether there should be a directed verdict on an undue influence claim in a will contest proceeding). Additional evidence of undue influence also includes evidence that the fiduciary has the power to influence the holder of the assets, the opportunity to do so, and if the disposition of property was a changed course of action. *Gross,* 840 S.W.2d at 258. Courts have adopted a liberal stance regarding the amount of evidence necessary to satisfy this prong. *See id.*

In this case, Decedent was blind. Respondent Goldschmidt and Archie Goldschmidt were the only people who assisted Decedent with his financial affairs. Decedent relied upon them to drive him places, and they drove him to the bank on the day the POD account was created. Thus, there is substantial evidence that Respondent Goldschmidt had the power and opportunity to influence Decedent.

In addition, the establishment of the POD account was a changed course of action for Decedent. Prior to the establishment of the POD account in March of 1998, Respondent Goldschmidt was not entitled to any assets from Decedent. But in March of 1998, the establishment of the POD account designated Respondent Goldschmidt as a beneficiary to the POD funds.

We find that the above evidence collectively constitutes substantial, additional evidence from which there is an inference of undue influence.

Accordingly, because there is substantial evidence in the record that: (1) Decedent and Respondent Goldschmidt had a confidential and fiduciary relationship; (2) Respondent Goldschmidt obtained a benefit; and (3) there is additional evidence from which there is an inference of undue influence, the record reveals a presumption of undue influence and thus Appellant has made a submissible case. Therefore, the trial court erred in entering a directed verdict on Appellant's claim of undue influence. Point granted.

In his second point on appeal, Appellant maintains the trial court erred in entering a directed verdict on his fraud claim.

We review under the same standard of review discussed above in the first point on appeal. As also noted above, the Nonprobate Transfers Law is applicable to the POD account in this case.

In his first sub-point on appeal, Appellant asserts that he made a submissible case of fraud because there is substantial evidence that Respondent Goldschmidt perpetrated fraud by silence on Decedent.

The primary rule of statutory construction is to determine the legislature's intent from the statute's language. *Tuft v. City of St. Louis,* 936 S.W.2d 113, 118 (Mo.App. E.D.1996). Subsection 461.054.1 of the Nonprobate Transfers Law provides that a POD account that is *procured* by fraud is void. Subsection 461.054.1. Because "procured" is not expressly defined in the Nonprobate Transfers Law of Missouri, the term is given its plain and ordinary meaning as found in the dictionary. *See Tendai v. Mo. Bd. of Reg. for Healing Arts,* 161 S.W.3d 358, 366 (Mo.banc 2005). The term "procure" is defined in relevant part as "to cause to happen or be done: bring about." *Webster's Third New International Dictionary* 1809 (1976).

In this case, Appellant alleges Respondent Goldschmidt perpetrated fraud by silence on Decedent in that she was aware of the POD account's increasing balance and failed to inform Decedent of this information. But this evidence pertains to the period of time following the creation of the POD account and does not relate to the time the POD account was caused to happen or brought about. Thus, this evidence is irrelevant to the procurement of the POD account.

Moreover, Appellant did not present any evidence that Decedent did not know about the POD account's increasing balance. Although Respondent Goldschmidt testified that she did not inform Decedent about the POD account's increasing balance, she said she did not do so because "[Decedent] knew how much he had in the bank." The undisputed evidence is that Decedent knew in 1999 that he had $400,000–$500,000 in the POD account, an amount very close to

the amount of the POD funds at the time of Decedent's death.

Therefore, because we find that Appellant's argument does not have merit, the trial court did not err in entering a directed verdict on his fraud claim. Sub-point denied.

■ In his second sub-point on appeal, Appellant claims he made a submissible case of fraud because there is substantial evidence Respondent Goldschmidt perpetrated a constructive fraud on Decedent.

■ To prove constructive fraud, a plaintiff must show that a person breached a promise to another during the existence of a confidential relationship. *Paletta v. Mercantile Bank, N.A.*, 889 S.W.2d 58, 61 (Mo.App. E.D.1994).

In this case, as discussed above in the first point on appeal, we find there is substantial evidence of a confidential relationship. But the only promise that Appellant maintains Respondent Goldschmidt breached is: "[Respondent Goldschmidt] ... promis[ed] to take care of [Decedent] when in fact she permitted him to live in filth," and this alleged promise of care was the basis for the establishment of Respondent Goldschmidt as a POD beneficiary. But the portion of the transcript cited by Appellant for evidence of this alleged broken promise reveals the following:

Appellant's counsel: Did [Decedent] as far as you know ever discuss why he put you and Archie [Goldschmidt] on [the POD account]?

Respondent Goldschmidt: I don't know if he discussed why he put us there, but several times he mentioned the fact he didn't know what he would do without the two of us to help him.

Appellant's counsel: Do you recall hearing that before March 25th of 1998?

Respondent Goldschmidt: Yes.

Appellant's counsel: After being put on as the POD beneficiary did you feel any obligation to continue to take care of [Decedent] at that point?

Respondent Goldschmidt: I felt like I always wanted to take care of [Decedent] at any point. If he needed help he got it.

Contrary to Appellant's assertion, this testimony does not establish that Respondent Goldschmidt promised Decedent she would take care of him in exchange for being placed as a beneficiary on the POD account. Rather, the testimony establishes Respondent Goldschmidt always wanted to take care of Decedent. Therefore, because we find that Appellant's argument lacks merit, the trial court did not err in entering a directed verdict on his fraud claim. Sub-point denied.

Before addressing Appellant's third point on appeal, we will address his fourth point on appeal.

In his fourth point on appeal, Appellant contends that the trial court erred when it denied his motions to amend his petition. Appellant's first amended petition and second amended petition attempted to assert the following previously dismissed and additional claims against Respondent Goldschmidt: mental incapacity, invalid gift, conversion/trover, negligent misrepresentation, breach of fiduciary duty, two counts of negligence per se, unilateral mistake, breach of express promise, and breach of implied promise (collectively "the additional claims in this case").

■ A trial court has broad discretion in allowing amendments to pleadings. *Wheelehan v. Dueker*, 996 S.W.2d 780, 782 (Mo.App. E.D.1999). We will only reverse a trial court's denial of a motion to amend a pleading if the decision is clearly erroneous. *Id.* "A trial court does not err when it denies a motion to amend a pleading to

assert a claim that possesses no merit." *Curnutt v. Scott Melvin Transport, Inc.,* 903 S.W.2d 184, 194 (Mo.App. W.D.1995).

▮ For a nonprobate transfer of property, the rights and obligations of the owner, beneficiary, and transferring entity are governed by the Nonprobate Transfers Law of Missouri. Subsection 461.062.1. As discussed above under the first point on appeal, a POD account is a nonprobate transfer of property and thus governed by the Nonprobate Transfers Law of Missouri.

Subsection 461.054.1 of the Nonprobate Transfers Law of Missouri provides that a POD account that is procured by fraud, duress or undue influence is void. Subsection 461.054.1. Subsection 461.054.2 states: "A beneficiary who willfully and unlawfully causes or participates with another in causing the death of the owner ... is disqualified from receiving any benefit" of a POD account. Section 461.054.2.

A general rule of statutory construction is that the express mention of one or more things implies the exclusion of others. *Groh v. Ballard,* 965 S.W.2d 872, 874 (Mo. App. W.D.1998). The legislature's express mention of fraud, duress, undue influence, and murder in subsections 461.054.1 and 461.054.2 as reasons for voiding a POD account imply that it did not intend the additional claims in this case be deemed causes for remedial action. *See id.* (holding that legislature's express mention of fraud, duress, undue influence, and murder as reasons for voiding a beneficiary deed under the Nonprobate Transfers Law imply that it did not intend the owner's unilateral mistake to be deemed a cause of remedial action).

Because the legislature did not intend that the additional claims in this case be deemed *causes for remedial action for* voiding a POD account, the additional claims in this case possessed no merit. Therefore, the trial court did not err in denying Appellant's motions to amend his petition. Point denied.

Although Points I, II, and IV are dispositive as to what claims will be addressed on remand, we review Appellant's remaining points because the analysis may be pertinent to the jury instruction and admission of evidence upon remand.

▮ In his third point on appeal, Appellant argues that the trial court erred in submitting Instruction No. 6 to the jury. Instruction No. 6 provides: "Your verdict must be that the document in issue is a valid payable on death designation of [Decedent] if you believe: The two signatures on the document are those of [Decedent]." Appellant maintains that this instruction did not follow the substantive law because it did not require the jury to find that the POD account satisfied all of NationsBank's requirements for the opening of a POD account.

▮ "Whether or not a jury was properly instructed is a question of law." *Twin Chimneys v. J.E. Jones Const.,* 168 S.W.3d 488, 497 (Mo.App. E.D.2005). Where the challenged instruction is not found in MAI, the instruction is proper if it follows the substantive law and can be readily understood. *Rice v. Bol,* 116 S.W.3d 599, 606 (Mo.App. W.D.2003).

We initially note that the challenged instruction is not found in MAI. As discussed above under the first point on appeal, the Nonprobate Transfers Law governs the POD account in this case. Thus, the issue in this point on appeal is whether Instruction No. 6 follows the Nonprobate Transfers Law and can readily be understood.

The primary rule of statutory construction is to determine the legislature's intent from the statute's language. *Tuft,* 936

S.W.2d at 118. Where two statutes concern the same subject matter, they must be read together and harmonized and effect must be given to the terms of each statute. *City of Ellisville v. Lohman*, 972 S.W.2d 527, 534 (Mo.App. E.D.1988). It follows that we apply the terms of the more specific statute rather than the terms of the more general statute. *Id.*

To summarize section 461.021 and the applicable definitions therein: a POD account transfers the right to receive property to the designated beneficiary who survives, effective on the death of the owner if the POD account is executed and delivered in accordance with the rules of the bank prior to the death of the owner. *See* sections 461.021, 461.005(2)(4)(15)(16). On the other hand, to summarize subsection 461.028.4 and the applicable definitions therein: a POD account transfers the owner's interest in the property to the designated beneficiary, effective on the owner's death if an account record or other written instrument evidences ownership of property in the owner's name followed by a transfer on death direction and before the designation of the beneficiary *or* if the request to make the transfer on death direction is delivered to the bank in accordance with the rules of the bank prior to the owner's death. *See* subsection 461.028.4; section 461.005(4)(13)(15)(16).

Thus, under section 461.021, a POD account is effective and thus valid if it is executed and delivered in accordance with the rules of the bank prior to the death of the owner. On the other hand, under subsection 461.028.4, a POD account is effective and thus valid if an account record evidences ownership of property in the owner's name followed by a POD designation and before the designation of the beneficiary *or* if the request to make the transfer on death direction is delivered in accordance with the rules of the bank prior

the owner's death. Because section 461.021 and subsection 461.028.4 both concern the effectiveness of a POD account, we apply the terms of the more specific statute. We find that subsection 461.028.4 is more specific than section 461.021 because subsection 461.028.4 provides two alternate ways for a POD account to be effective.

Moreover, subsection 461.028.5 reveals the specific nature of section 461.028, providing:

> An account record ... that contains a transfer on death direction written as part of the name in which the property is held or registered, is *conclusive evidence* in the absence of fraud, duress, undue influence or evidence of clerical mistake by the transferring entity that the direction was regularly made by the owner and accepted by the transferring entity.... Subsection 461.028.5 (emphasis added).

In this case, because subsections 461.028.4 and 461.028.5 are the applicable substantive law, if there is no evidence of fraud, duress, undue influence or evidence of clerical mistake by the transferring entity, the POD account transfers Decedent's interest in the property to Respondent Goldschmidt, effective on Decedent's death if an account record or other written instrument evidences ownership of property in Decedent's name followed by a transfer on death direction and before the designation of the Respondent Goldschmidt *or* if the request to make the transfer on death direction is delivered in accordance with the rules of NationsBank prior to Decedent's death. Because it is undisputed that the POD account record with NationsBank contained the abbreviation "POD" after Decedent's name and before the designation of Archie Goldschmidt and Respondent Goldschmidt as beneficiaries, it was not mandatory to include this issue in

the jury instruction. *See Boggs ex rel. Boggs v. Lay,* 164 S.W.3d 4, 20 (Mo.App. E.D.2005) (holding when a fact material to the plaintiff's case is undisputed by the parties, it is not mandatory to include it in the jury instruction). Nor was it necessary for the jury to find that the POD account was delivered in accordance with the rules of NationsBank.

Therefore, the trial court did not err in submitting Instruction No. 6 to the jury because it required the jury to make a finding on the only issue remaining for the jury at that time, i.e. whether Decedent's signatures on the POD account are genuine. Point denied.

■ In his final point on appeal, Appellant asserts the trial court erred in excluding testimony concerning events that took place years after the establishment of the POD account.

■ A trial court has broad discretion to exclude evidence and its ruling will be affirmed only if there is a clear abuse of discretion. *Jone v. Coleman Corp.,* 183 S.W.3d 600, 608–09 (Mo.App. E.D.2005). A trial court abuses its discretion when its decision is clearly against the logic of the circumstances, shocks the sense of justice, and shows a lack of careful consideration. *Id.* at 609.

Subsection 461.054.1 provides that a POD account that is *procured* by undue influence is void. Subsection 461.054.1. As discussed in the first sub-point to Point II on appeal, because "procured" is not expressly defined in the Nonprobate Transfers Law of Missouri, the term is given its plain and ordinary meaning as found in the dictionary. *See Tendai,* 161 S.W.3d at 366. The term "procure" is defined in relevant part as "to cause to happen or be done: bring about." *Webster's Third New International Dictionary* 1809.

Appellant asserts that trial court erred in excluding, *inter alia,* the following testimony: (1) evidence concerning the lack of care Decedent received years after the establishment of the POD account, and (2) Respondent Goldschmidt's actions years after the establishment of the POD account. Because this evidence is not relevant to the causation, or bringing about, of the POD account, the trial court did not err in excluding it. Point denied.

Based upon the foregoing, we affirm in part and reverse and remand in part for further proceedings consistent with this opinion.

GEORGE W. DRAPER, III, P.J., and ROBERT G. DOWD, JR., J., Concur.