Gladys CAMPBELL, et al.,
Plaintiffs/Appellants,

v.

TENET HEALTHSYSTEM, DI, INC.,
Defendant/Respondent.

No. ED 88537.

Missouri Court of Appeals,
Eastern District,
Division Four.

May 29, 2007.

Joseph A. Fenlon, Gregory G. Fenlon, Clayton, MO, for Appellant.

Kevin F. O' Malley, Mary L. Reitz, Erin F. Bernstein, St. Louis, MO, for Respondent.

ROY L. RICHTER, Presiding Judge.

Gladys Campbell and Helen Burnett ("Plaintiffs"), surviving sisters of Cornelia Goodman ("Goodman"), appeal the judgment enforcing a personal injury settlement and dismissing a claim for wrongful death. We affirm.

## I. BACKGROUND

Goodman, an elderly woman, was admitted to Forest Park Hospital, owned and operated by Tenet Health System DI, Inc. ("Defendant"), and thereafter fell down on February 4, 2003, suffering significant injuries. After hospitalization, Goodman was discharged and entered a nursing home until she died on February 12, 2004.

Nine months prior to her injury, Goodman had executed a durable power of attorney appointing her sister, Gladys Campbell ("Campbell"), as her attorney-in-fact. This power of attorney granted Campbell the power "to ask, demand, sue for, collect and receive all sums of money, dividends, interest, rent, payments on account of debts and legacies, and all property now due or which may hereafter become due and owing to [Goodman]...."

Following Goodman's accident at the hospital, Campbell, acting on behalf of Goodman, signed a contingent fee agreement with an attorney ("Attorney"), "to collect sums due" for the injuries sustained by Goodman. After communicating with Defendant's litigation manager ("Litigation Manager"), Attorney made a settlement demand and Defendant made a counteroffer. On February 23, 2004, after

Goodman's death, Attorney orally accepted Defendant's settlement offer. However, neither Attorney nor Defendant learned of Goodman's death until February 25, 2004, two days after acceptance of the settlement. Defendant consequently put a "hold" on issuing a settlement check to allow time for an estate to be opened and for a personal representative to be appointed. Campbell subsequently terminated Attorney and hired new counsel to pursue the claims from which this appeal arises.

Plaintiffs brought suit against Defendant, asserting actions for Goodman's personal injuries and wrongful death. Defendant moved to enforce the earlier settlement. After hearing evidence on the motion, the trial court enforced the settlement, ordering Defendant to pay the previously agreed-upon amount of $35,000 and interest. The trial court also dismissed Plaintiffs' wrongful death claim with prejudice, ruling that it was precluded by the personal injury settlement. Plaintiffs appeal.[1]

## II. DISCUSSION

Review of a judge-tried case is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The trial court's judgment will be upheld unless there is no substantial evidence to support it, it is against the weight of the evidence or it erroneously declares or applies the law. *Id.* When a party requests specific performance of a settlement agreement, it must prove its claim for relief by clear, convincing, and satisfactory evidence. *Tirmenstein v. Central States Basement and Foundation Repair, Inc.*, 148 S.W.3d 849, 851 (Mo.App. E.D.2004). We afford the trial court much discretion in deciding

1. We deny Defendant's motion to dismiss Plaintiffs' appeal or, in the alternative, to strike Plaintiffs' brief. In addition, Plaintiffs' motion to supplement the Legal File with Litigation Manager's deposition is granted.

whether to award the equitable remedy of specific performance. *Id.*

■ In their first point, Plaintiffs contend the trial court erred in holding that Goodman's power of attorney authorized Campbell to hire Attorney to pursue Goodman's personal injury claim because the power of attorney was limited, not general, and failed to include pursuing a tort claim within its list of powers. We disagree.

Goodman's power of attorney gave her attorney-in-fact the authority "[t]o ask, demand, sue for, collect and receive all sums of money, dividends, interest, rent, payments on account of debts and legacy, and all property now due or which may hereafter become due and owning to me...." [2] In addition, Goodman's power of attorney also enabled her attorney-in-fact to "do and perform all and every act and thing whatsoever necessary to be done in the premises, in order fully to carry out and effectuate the authority herein granted...."

Plaintiffs' interpretation of Goodman's power of attorney does not match the stated intent of the instrument. The words of the document vest Goodman's attorney-in-fact with the power to sue and collect monies on her behalf.[3] These words gain strength when read beside the provision authorizing Goodman's attorney-in-fact to perform all acts necessary to her other powers. Together, we interpret these sections to authorize Goodman's attorney-in-fact to retain an attorney to pursue a tort claim, a step in securing the relief allegedly owed to Goodman. Accordingly, we cannot say the trial court's judgment finding the power of attorney granted the attorney-in-fact authority to sue for per-

sonal injury was against the weight of the evidence. Point denied.

■ In their second point, Plaintiffs assert that the settlement between Attorney and Defendant was unenforceable because it occurred after Goodman died. We disagree.

■ First, we address the relationship between the principal, Goodman, her attorney-in-fact, Campbell, and Attorney. We must consider that Attorney, not Campbell, interacted with Defendant. Agency law dictates that "a principal ... is responsible for the acts and agreements of its agents which are within their actual or apparent authority." *Cook v. Polineni*, 967 S.W.2d 687, 691 (Mo.App. E.D.1998) (citation omitted). Here, the record shows that Campbell retained Attorney to "collect sums due" for injuries suffered by Goodman. No party alleges otherwise. Therefore, because Attorney was authorized to act, in addressing whether the authority granted in Goodman's power of attorney continued after Goodman's death, we impute Attorney's actions to Goodman's attorney-in-fact, Campbell.

We now turn to Plaintiffs' point. Plaintiffs assert that the authority given to Goodman's attorney-in-fact terminated with Goodman's death because Section 404.717.1 RSMo 2000,[4] in part, reads, "As between the principal and attorney in fact ... the authority granted in a power of attorney shall be modified or terminated as follows: (4) On the death of the principal...." Plaintiffs take an overly narrow view of the law. They have ignored Sections 404.719 and 404.721. Section 404.719.1(13) indicates that a third party

---

2. The attorney-in-fact was also vested with powers listed over an additional two pages.

3. Section 404.710.6 RSMo 2000 lists a number of acts for which an attorney-in-fact must

be granted specific authority. Pursuing a tort claim is absent from this list.

4. All further statutory references are to RSMo 2000.

may rely and act on a power of attorney executed by a principal and has no duty to inquire into whether "the principal is alive...." Moreover, Section 404.721.1 provides that "the authority granted in a power of attorney shall terminate ... on the date when the third person acquires actual knowledge of the death of the principal...."

■■ When two statutes address the same subject matter, in the context of statutory construction, the more specific statute controls over the more general. *Crack Team USA, Inc. v. American Arbitration Ass'n*, 128 S.W.3d 580, 581 (Mo. App. E.D.2004). Here, Section 404.719.1 specifically governs the exemption of third persons from liability when dealing with attorneys-in-fact. Section 404.721.1 specifically announces that the authority of a power of attorney lasts until a third party acquires actual knowledge of the death of the principal. Applying these statutes over the more general Section 404.717.1, we find that Defendant was not obligated to inquire whether Goodman, the principal, was alive at the time of settlement. Moreover, the authority granted by the power of attorney remained at the time of settlement since Defendant had not yet received actual knowledge of Goodman's death.[5] In

addition, were we to interpret the law as Plaintiffs suggest, Sections 404.719 and 404.721 would be rendered, in part, meaningless.[6] Therefore, the trial court did not err in finding the settlement enforceable even though settlement occurred after Goodman's death. Point denied.

We next address a number of Plaintiffs' points together. Plaintiffs allege that the trial court erred in enforcing the settlement agreement because Defendant anticipatorily repudiated by failing to prepare a settlement release, failing to inform Plaintiffs that the settlement check was placed on hold and moving to dismiss one of Plaintiffs' claims. We disagree.

■ Anticipatory repudiation "occurs when a party to a contract manifests a positive intention not to perform either by expressed statement or by conduct." *S & P Oyster Co., Inc. v. U.S. Fidelity and Guar. Co.*, 865 S.W.2d 379, 382 (Mo.App. E.D.1993). The record fails to reveal evidence showing that Defendant possessed a positive intention not to perform the settlement. To the contrary, Defendant has presented testimony that it held payment and release in order to allow a personal representative to be appointed for Goodman's estate. Moreover, the evidence shows that Plaintiffs, having fired Attor-

5. Plaintiffs contend that the oral settlement was not final because it was uncertain and there was a mutual mistake in that both Attorney and Litigation Manager believed Goodman to be alive at the time of settlement. Plaintiffs' argument is unpersuasive. "Settlement agreements are governed by the law of contracts, and a settlement agreement does not have to be in writing unless the subject matter is within the statute of frauds.... Accordingly, assuming there had been a meeting of the minds, oral settlement agreements may be enforced." *Bolander v. City of Green City*, 35 S.W.3d 432, 440 (Mo.App. W.D.2000) (citation omitted). Here, the record shows a meeting of the minds. Attorney testified that he "spoke with [Defendant] and communicated acceptance of the offer." Moreover, a

theory of mutual mistake as to the nature of an injury is not recognized as a ground to void a settlement or release of a personal injury claim in the absence of inequitable conduct by a defendant. *Burger v. Bridgestone/Firestone, Inc.*, 902 S.W.2d 308, 311 (Mo.App. E.D.1995).

6. Specifically, if we were to follow Plaintiffs' argument that the actions of an attorney-in-fact are ineffective at the moment a principal dies, Section 404.721.1, indicating that the authority granted in a power of attorney ceases when a third party acquires actual knowledge of the principal's death, would become superfluous.

ney, and hiring new counsel, failed to either inquire about or demand payment from Defendant and failed to see that a personal representative was appointed until nearly a year after Goodman's death.[7]

◼ Plaintiffs' allegation that Defendant's Motion to Dismiss repudiated the settlement is similarly unpersuasive. Defendant's Motion to Dismiss stated, in part, that Plaintiffs' personal injury claim should be dismissed because "Campbell did not have legal standing to file suit as [Campbell's] personal representative on February 4, 2005, and was not appointed as personal representative until March 18, 2005" after the statute of limitations for such a claim expired. We fail to see how Defendant's moving to dismiss based on Campbell's lack of standing affects the earlier settlement, much less evidences a positive intention by Defendant not to perform. Point denied.

◼ In their next point, Plaintiffs allege that the trial court erred in holding that the settlement of Goodman's personal injury claim extinguished any claim for wrongful death because neither party contemplated such a claim. We disagree.

Section 537.080.1, Missouri's wrongful death statute, provides:

Whenever the death of a person results from any act, conduct, occurrence, transaction, or circumstance which, if death had not ensued, would have entitled such person to recover damages in respect thereof, the person or party who, or the corporation which, would have been liable if death had not ensued shall be liable in an action for damages, notwithstanding the death of the person injured....

Where a statute's language is clear, we give effect to its plain meaning and do not apply rules of construction unless an ambiguity exists. *Vance Bros., Inc. v. Obermiller Const. Services, Inc.*, 181 S.W.3d 562, 564 (Mo. banc 2006). Here, we find no ambiguity. Section 537.080.1 is clear on its face. Only when death results from an act, which if death had not ensued, would have entitled a person to recover damages, may a plaintiff recover for wrongful death.

In determining whether Goodman would have been entitled to recover damages had death not ensued, we first consider whether Attorney and Litigation manager contemplated releasing Defendant from liability in settling Goodman's personal injury claim. Litigation manager testified about this topic at her deposition. In response to the question, "And by the terms of that settlement were all of [Goodman's] claims arising out of her stay at Forest Park Hospital extinguished?" Litigation manager stated, "That was the deal."

◼ In their brief, Plaintiffs argue that "[Litigation Manager's] claim that she intended to include a death claim she [did] not know about in her agreement is not credible." While Plaintiffs' assertion assumes otherwise, this Court defers to the trial court as the finder of fact, including credibility, in determining whether there is substantial evidence to support the judgment, even when those facts are derived from depositions. *Brizendine v. Conrad*, 71 S.W.3d 587, 590 (Mo. banc 2002) (citation omitted). This deference notwithstanding, we need not determine whether a wrongful death claim was contemplated.

In *Stern v. Internal Medicine Consultants, II, L.L.C.*, 452 F.3d 1015 (8th Cir. 2006), the Eighth Circuit applied Missouri Law in analyzing a similar issue. In *Stern*, a mother brought a wrongful death

---

**7.** Attorney continued to communicate with Defendant regarding his attorney's lien over settlement proceeds after Campbell terminated his representation.

claim based on medical negligence after her son died of cancer. *Id.* at 1015. Before his death, however, son filed a medical malpractice action against his physicians and ultimately settled his lawsuit and signed a release, absolving his physicians from liability for all claims, including any future claim for wrongful death. *Id.* Determining whether son's release precluded mother from bringing a wrongful death claim, the Court affirmed the District Court which held, in part, that mother "could not satisfy the requirement under Missouri law that she plead and prove that her son could have maintained a cause of action for personal injuries had he survived." *Id.* at 1016.

While *Stern* involved a written release, the principles, nevertheless, hold true. The *Stern* Court framed its inquiry of whether a claim for wrongful death could stand, in part, as whether, pursuant to Section 537.080.1, son would have been able to pursue a personal injury claim had death not ensued. Interpreting Section 537.080.1, the *Stern* Court noted that this statutory requirement echoes a longstanding rule of Missouri law:

> The gist and foundation of the right in all cases is the wrongful act, and that for such wrongful act but one recovery should be had, and that if the deceased had received satisfaction in his lifetime, either by settlement and adjustment or by adjudication in the courts no further right of action existed.

*Id.* at 1019 (citing *Strode v. St. Louis Transit Co.*, 197 Mo. 616, 95 S.W. 851, 856 (Mo. banc 1906)).

Here, we similarly ask whether Goodman would have been able to pursue a personal injury claim had she survived. We find that she would not. As discussed above, Attorney and Litigation Manager,

in making an oral settlement, contemplated releasing Defendant from liability for Goodman's personal injury. Consequently, had Goodman survived, she would be unable to pursue a personal injury claim against Defendant. In the words of Section 537.080.1, Goodman would not be "entitled … to recover damages." Because the earlier settlement of Goodman's personal injury claim would prohibit Goodman from suing for personal injury if she had not died, by Section 537.080.1 her survivors are foreclosed from recovering for wrongful death. *Id.* at 1019–20; *Strode*, 95 S.W. at 856. Accordingly, the trial court did not err. Point denied.

In their final point, Plaintiffs contend the trial court erred in accepting the deposition of Litigation Manager because she did not have an independent recollection of the events to which she was testifying. Also within this point, Plaintiffs allege the trial court erred in overruling Plaintiffs' motion to exclude a portion of Litigation Manager's deposition because Defendant failed to update its answers to Plaintiffs' interrogatories.[8] We disagree.

 The trial court has broad discretion to admit or exclude evidence. *Jone v. Coleman Corp.*, 183 S.W.3d 600, 608 (Mo. App. E.D.2005). We will affirm the trial court's decision absent a clear abuse of discretion. *Id.* at 609. An abuse of discretion occurs when a court's ruling is clearly against the logic of the circumstances then before it and is so unreasonable and arbitrary that it shocks notions of justice and indicates a lack of careful and deliberate consideration. *Id.*

 While Plaintiffs contend that the trial court erred in admitting Litigation Manager's deposition because she had no

---

8. Plaintiffs also assert that Defendant withheld portions of its claim file for Gladys Campbell's case. We find no evidence in the record to support this allegation.

independent recollection, Plaintiffs have not preserved this point for appellate review. At trial, Plaintiffs failed to object to the admission of Litigation Manager's deposition on this ground. "Where a party raises an issue for the first time on appeal, that party has failed to preserve the issue for appellate review." *Bowan ex rel. Bowan v. General Sec. Indemn. Co. of Arizona*, 174 S.W.3d 1, 7 (Mo.App. E.D.2005).

 Next, Plaintiffs allege that because Defendant failed to update answers to Plaintiffs' interrogatories, the trial court should have excluded any information from Litigation Manager's testimony outside her original interrogatory answers. However, Plaintiffs have failed to include copies of either the original interrogatory answers or their request for supplementation. Nevertheless, Rule 56.01(e) imposes a duty on a party to amend a prior response to an interrogatory if the party learns that the response is incomplete or incorrect and "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Here, the trial court found that any supplemental information had been made known to Plaintiffs during Litigation Manager's deposition. Even assuming that Defendant's answers to Plaintiffs' interrogatories were incomplete, because Plaintiffs learned additional information during discovery, we cannot say the trial court abused its discretion in denying Plaintiffs' motion. Point denied.

## III. CONCLUSION

The judgment is affirmed.

KATHIANNE KNAUP CRANE and SHERRI B. SULLIVAN, JJ., Concur.