CITIZENS NATIONAL BANK, Plaintiff–Appellant,

v.

The **MARIES COUNTY BANK**, Allen Jones and Leisa Jones, Defendants–Respondents.

No. 28164.

Missouri Court of Appeals, Southern District, Division Two.

Jan. 31, 2008.

Lee J. Viorel, III, C. Matthew Towns, Springfield, for appellant.

Albert A. Crump, Jr., Vienna, for respondent.

NANCY STEFFEN RAHMEYER, Judge.

Citizens National Bank ("Appellant") asserted a claim of negligence against Maries County Bank ("Respondent") for the proceeds from a closing that was conducted by Respondent when it financed the purchase of a manufactured home for its customers, Allen and Leisa Jones.[1] The Jones' intervened in the suit and counterclaimed for the manufacturer's statement of origin ("MSO") to the manufactured home, which was in Appellant's possession. The trial court rendered a judgment for Respondent and ordered the MSO to be turned over to the Jones'. This appeal followed.

### STATEMENT OF FACTS

On March 19, 2003, Appellant and U.K. Homes, L.L.C. ("U.K. Homes"), by Keith Richards, entered into a promissory note, security agreement, and floor plan agreement whereby Appellant financed the floor plan of U.K. Homes for the sale of manu-

---

1. Although we refer to Maries County Bank as Respondent, it is important to note that the Jones' are also Respondents and both are represented by the same attorney in this appeal.

factured homes. Floor plan financing is a method of financing where a lender provides money for the purpose of allowing a dealer of goods to buy inventory that is later resold to the consumer. Appellant advanced funds after the manufacturer advised it that a new manufactured home was to be built. As soon as the manufactured home was built, Appellant would receive an MSO in exchange for the check it issued to U.K. Homes. This allowed U.K. Homes to obtain specific pieces of inventory and, as that inventory was sold to the consumer, the bank was to be repaid the amount that it issued to floor plan the particular item. Appellant was one of three floor plan financiers of U.K. Homes. Appellant protected its interest through a UCC–1 filing on the U.K. Homes inventory and by holding the MSO. Appellant required that the dealer repay the amount of the floor plan advance to obtain a release of the MSO.

In April of 2003, the Jones' visited the showroom of U.K. Homes in Strafford, Missouri, to find a home to put on their property in Maries County; they decided to purchase a home and placed an order. The Jones' were given a sales invoice that identified the details of what they wanted to purchase. Thereafter, they talked to Bryan Steinman, an agent of Respondent, about the possibility of a loan to purchase the manufactured home they saw. Mr. Steinman indicated that Respondent could make such a loan available to them.

On April 21, 2003, Allen Jones authorized U.K. Homes to proceed with the manufacture of the Fairmont Wellington manufactured home by delivering to U.K. Homes a down payment of $2,000. U.K. Homes then advised one of its manufacturers, Fairmont Homes, Inc., in Indiana, to start manufacturing the home pursuant to the specifications set out by Mr. and Mrs. Jones.

Appellant sent a floor plan commitment to Fairmont Homes, which was received by Fairmont Homes on April 28, 2003, for payment of $23,790 for the creation of the manufactured home, which was the subject of the purchase agreement between U.K. Homes and the Jones'. Fairmont prepared an MSO on April 28 and mailed the same to Appellant. Appellant received the MSO on May 8, 2003, along with a copy of the invoice and a letter. The documents requested that Appellant forward $23,790 to Fairmont, which it did.

Respondent agreed to act as the settlement agent and to close the loan for the Jones' on May 7, 2003. At that same time, Respondent prepared a closing statement and the loan documents to provide financing to the Jones' to refinance their land mortgage with proceeds to pay for the Fairmont manufactured home. Respondent received a deed of trust and security agreement to secure its advance. The loan documents were prepared and a closing took place on May 7, 2003.

At the closing of the Jones' loan, Respondent did not check with the Missouri Secretary of State for UCC–1 filings on inventory, nor did it attempt to get a title application at the time the security agreement was signed. Respondent asserts that it was relying on U.K. Homes to apply for a title and to get the MSO for the Fairmont Wellington manufactured home. Respondent issued a check dated May 8, 2003, payable to U.K. Homes in the amount of $32,241.50, to the Jones' for the purchase of the manufactured home.

The manufactured home was sent to Strafford, Missouri, and on approximately May 9, 2003, it was brought to Maries County, Missouri. When it was delivered, Allen Jones gave the proceeds check from Respondent to U.K. Homes and Mr. Jones received a bill of sale. U.K. Homes did not forward the proceeds of the check on

to Appellant. At no time prior to trial did the Jones', or anyone on their behalf, apply for a title for the manufactured home, which has since been affixed to the real estate.

In June 2004, U.K. Homes defaulted on its loan to Appellant. At that time, Appellant became aware of the sale of eleven manufactured homes out of trust by U.K. Homes, one of which was the Jones' transaction. The principal of U.K. Homes, Keith Richards, and his wife filed for Chapter 7 bankruptcy relief in July of 2005. On April 26, 2006, Appellant obtained a judgment of non-dischargeability from the bankruptcy court and a money judgment against Mr. Richards for $314,993.29. Appellant liquidated all of its collateral and the debt from the judgment remains unsatisfied. Appellant sought payment from Respondent, which ultimately led to the current action in this appeal. Appellant sought damages based on a negligence cause of action from Respondent as a lender and as the closer of the loan transaction in the amount of $23,790. Respondent filed its notice of lien with regard to the manufactured home on October 11, 2005, after this lawsuit was filed. The Jones' sought the MSO from Appellant in order to title the manufactured home.

### CLAIM ON APPEAL

On appeal, Appellant brings six points challenging the trial court's application of the UCC and its findings regarding which statutes govern the relevant transactions. For ease of discussion, we shall commence our discussion with Appellant's second point. In its second point, Appellant claims the trial court erred in determining that Respondent owed no duty to conform to a standard of conduct toward Appellant while acting as a settlement agent at closing. Appellant asserted that Respondent's breach of duty was in failing to obtain a certificate of origin, or any titling documents at closing or afterward, and to distribute sale proceeds to Appellant even though Appellant perfected its interest in the manufactured home sold to Mr. and Mrs. Jones by filing a UCC–1 statement in the inventory of the dealer of the manufactured home. Appellant claims the law imposes a duty on Respondent based upon a statute, foreseeability, and the relationship of the parties.

In reviewing this court-tried case, an appellate court must affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or erroneously declares or applies the law. *Foster v. Village of Brownington*, 140 S.W.3d 603, 607 (Mo.App. W.D.2004). This Court is primarily concerned with the correctness of the trial court's result, not the reasoning of the trial court in reaching that result; therefore, the judgment will be affirmed if cognizable under any theory, regardless of whether the reasons advanced by the trial court are wrong or not sufficient to reach that result. *Business Men's Assur. Co. of America v. Graham*, 984 S.W.2d 501, 506 (Mo. banc 1999).

We are mindful that although both parties have argued extensively on the application of the UCC to these facts, Appellant brought this case against Respondent for common law negligence. Appellant sued Respondent claiming that Respondent owed a duty to Appellant to disburse the loan proceeds to Appellant as the holder of a security interest in the manufactured home. Although the UCC provisions may be relevant to identify the status of the parties involved when the litigation concerns the priority rights of those parties to collateral, the provisions of the UCC do not control the analysis under a common law negligence claim for money damages.

■ Appellant had to establish negligence by proving that (1) Respondent had a duty to protect Appellant from injury, (2) Respondent failed to perform that duty, (3) Respondent's failure proximately caused injury to Appellant, and (4) actual damages to Appellant's person or property occurred. *Sill v. Burlington Northern Railroad,* 87 S.W.3d 386, 391 (Mo.App. S.D. 2002). A failure of proof on any of these elements negates the cause of action. Duty is an element of negligence that is determined as a matter of law. *Deuschle v. Jobe,* 30 S.W.3d 215, 218 (Mo.App. W.D. 2000).

> A legal duty owed by one to another may arise from at least three sources: (1) it may be proscribed by the legislative branch; (2) it may arise because the law imposes a duty based on the relationship between the parties or because under a particular set of circumstances an actor must exercise due care to avoid foreseeable injury; or (3) it may arise because a party has assumed a duty by contract (agreement) whether written or oral.

*Lumbermens Mut. Cas. Co. v. Thornton,* 92 S.W.3d 259, 263 (Mo.App. W.D.2002) (*citing Scheibel v. Hillis,* 531 S.W.2d 285, 288 (Mo. banc 1976)). Although Appellant argues that a duty is imposed on Respondent from all three sources, we find that the law has imposed no duty on Respondent as to its relationship with Appellant. The trial court did not determine, nor do we make any finding, as to the duty on the part of Respondent to the Jones' as either lender or as closing agent.

■ First, Appellant asserts that Respondent owes a duty to Appellant that is prescribed by section 700.320.1,[2] which provides what must be done to properly title a manufactured home: "[t]he owner of any new or used manufactured home ...

shall make application to the director of revenue for an official certificate of title to such manufactured home in the manner prescribed by law...." Appellant argues that Respondent was acting as closing agent on behalf of Mr. and Mrs. Jones, the owners, and, therefore, was under a duty to comply with section 700.320.1. We disagree.

■ Section 700.320.1 clearly applies to the "owner" of the manufactured home. Respondent was never the owner of the manufactured home. Respondent, acting as the closing agent, was the agent to a disclosed principal, Mr. and Mrs. Jones. As a well-settled principle of the law of agency, the agent of a disclosed principal does not become a party to a contract, nor would the agent assume any of the principal's duties simply because of their role as agent; therefore, the agent is not liable to a third party unless the agent of a disclosed principal agrees or undertakes the obligations. *Ingram v. Lupo,* 726 S.W.2d 791, 794 (Mo.App. E.D.1987). Section 700.320.1 did not impose a duty on Respondent to protect the interests of Appellant.

■ Likewise, Appellant has failed to prove that the law imposes a duty on Respondent based on the relationship between the parties or any contract between the parties. Missouri case law recognizes a relationship between parties where one is acting for the benefit of the other.

> The judicial determination of the existence of a duty rests on sound public policy as derived from a calculus of factors: among them, the social consensus that the interest is worthy of protection; the foreseeability of harm and the degree of certainty that the protected person suffered injury; moral blame society attaches to the conduct; the prevention

2. All references to statutes are to RSMo 2000, unless otherwise specified.

of future harm; consideration of cost and ability to spread the risk of loss; the economic burden upon the actor and the community-the others.

*Hoover's Dairy, Inc. v. Mid–America Dairymen, Inc./Special Products, Inc.,* 700 S.W.2d 426, 432 (Mo. banc 1985).

Here, Appellant claims the relationship arises because it is a lien holder in the manufactured home that was the subject of Respondent's lending relationship. This Court can see no public policy that would require a consumer lending bank to assume the duty of determining the dealer's floor plan arrangements when making consumer loans. In this case, the only person who had a contractual obligation to pay Appellant was the dealer; the dealer that failed to meet its obligations. Respondent had no business relationship with the dealer of which Appellant can claim to be a third-party beneficiary. The offending dealer is not a party to this lawsuit. While it is true that Appellant had properly protected its interest in the manufactured home under the UCC by filing its UCC–1 statement, this protection gave Appellant protection in an action on the priority of liens. Our analysis as to whether Respondent has a duty to Appellant does not change even though, as a practical matter, a prudent lender would protect its own interest by checking for prior liens before lending money on titled property. Likewise, in this case of first impression, we do not find this to be a case where Respondent, as the lender, should have used due care to avoid foreseeable injury to Appellant. Appellant is simply too far removed in the relationship between the parties.

Thus, Appellant has shown no duty on the part of Respondent by statute, or by law, because of the relationship of the parties.

Finally, Appellant did not allege any oral or written contract between itself and Respondent; therefore, no duty was created. As such, Appellant has failed to establish a legal duty on the part of Respondent to Appellant. In the absence of a duty, Respondent's actions could not be the proximate cause of any claimed damages. The trial court properly found that Respondent was not the proximate cause of Appellant's damages and, thus, appropriately entered judgment for Respondent on Appellant's claim of negligence. The same is not true of the trial court's judgment ordering Appellant to give the MSO to the Jones'.

 The MSO is one of the subjects in Appellant's first point[3] in which it contends the trial court erred in determining that the Jones' and Respondent were buyers in the ordinary course of business under section 400.9–320 because Article 9 of the UCC does not apply to the transaction. Specifically, Appellant contends that section 700.350 controls the analysis in that the Jones' were on notice of Appellant's lien and Respondent was the loan closer and never a buyer. For these reasons, Appellant contends that the Jones' were not entitled to a judgment ordering Appellant to release the MSO to the Jones'.

 The sale of manufactured homes is governed by Chapter 700 of the Missouri Revised Statutes. *Dimmitt v. Pro-*

---

**3.** Point I contains two separate claims of trial court error: first, a claim that the finding that Respondent was not a buyer was error; and, second, that the Jones' were not entitled to the MSO because of section 700.350.2. Although points containing multifarious allegations of error violate the rule governing contents of briefs, the policy of the Supreme Court of Missouri is to decide a case on its merits rather than on technical deficiencies in the brief. *Christeson v. State,* 131 S.W.3d 796, 799 n. 5 (Mo. banc 2004). We find the point has not impeded our judicial review and, thus, address Appellant's point.

*gressive Cas. Ins. Co.,* 92 S.W.3d 789, 791 (Mo. banc 2003). Under section 700.320.1:

> The owner of any new or used manufactured home ... shall make application to the director of revenue for an official certificate of title to such manufactured home in the manner prescribed by law for the acquisition of certificates of title to motor vehicles, and the rules promulgated pursuant thereto. *All ... penalties provided by law for the failure to title motor vehicles shall apply to persons required to make application for an official certificate of title by this subsection.*

Section 301.210 prescribes the manner in which a certificate of title for a motor vehicle is acquired. *Dimmitt,* 92 S.W.3d at 791. When the ownership of a motor vehicle is sold or transferred, this statute requires that the holder of the certificate of ownership "endorse on the same an assignment thereof, with warranty of title in form printed thereon ... and deliver the same to the buyer at the time of the delivery to him of such motor vehicle...." [Section] 301.210.1. The buyer is required to present the assigned certificate of ownership to the Director of Revenue and obtain a new title. [Section] 301.210.2. Finally, [section] 301.210.4 states:

> It shall be unlawful for any person to buy or sell in this state any motor vehicle or trailer registered under the laws of this state, unless, at the time of the delivery thereof, there shall pass between the parties such certificates of ownership with an assignment thereof, as provided in this section, and the sale of any motor vehicle or trailer registered under the laws of this state, without the assignment of such certificate of ownership, shall be fraudulent and void.

"Missouri courts have consistently held that by reason of [section] 301.210, even if accompanied by full payment or physical delivery of possession, the attempted sale of a motor vehicle is fraudulent and void, passing neither legal nor equitable title, unless as a reasonably contemporaneous part of the transaction, the previously issued certificate of ownership with a properly completed assignment by the seller is delivered to the buyer." *State v. Beaird,* 914 S.W.2d 374, 378 (Mo.App. S.D.) 1996. A putative purchaser does not even acquire a right to possess the motor vehicle unless he or she receives a properly-endorsed certificate of title. *Okello v. Beebe,* 930 S.W.2d 40, 43 (Mo.App. W.D. 1996).

*Meyers v. Johnson,* 182 S.W.3d 278, 281 (Mo.App. S.D.2006) (emphasis in original.).

There is absolutely no question in this case that the purported sales transaction between the Jones' and U.K. Homes did not comply with sections 700.320 and 301.210 because there was no contemporaneous delivery of a properly-endorsed certificate of title to the Jones'. *See Meyers,* 182 S.W.3d at 281. The Jones' duty was mandatory under the statute. Their failure to do their duty results in a void transaction. The Jones' argue that they could not apply for a certificate of title because "under Section 301.200 ... the manufacturer's statement of origin [must] be submitted with the application for an initial certificate of title in a sale from a dealer and specifically places the burden on such dealer to execute and deliver such statement of origin to the Director of Revenue." Of course, that is the reason that Appellant took possession of the MSO at the time that it lent the money for the purchase of the manufactured home; it is precisely the reason that Appellant has refused to surrender the MSO; and it is exactly the reason why the buyers should have insisted upon receiving the MSO contemporaneously with the remittance of

their purchase price to the dealer. What is before this Court is a judgment entered in favor of the Jones' against an unrelated third party, Appellant. The Jones' had no relationship with Appellant and no legal cause of action against Appellant for the assignment of the MSO. The court erred in ordering Appellant to assign its interest in the MSO to the Jones' and the judgment cannot stand. Appellant's first point is granted.

The judgment in favor of Respondent is affirmed; the judgment ordering Appellant to assign and deliver the MSO of the manufactured home, Serial No. MY03120589AB, to Allen and Leisa Jones is reversed.[4]

LYNCH, C.J., and BARNEY, P.J., concur.

---

4. Appellant's additional points on appeal will not be addressed as each challenges a finding of the trial court that do not affect our decision that Respondent did not owe a duty to Appellant.