Lauren N. WILEY, Appellant–Respondent,

v.

Ryland R. HOMFELD, Respondent–Appellant.

Nos. WD 69560, WD 69599.

Missouri Court of Appeals, Western District.

Nov. 3, 2009.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 22, 2009.

Application for Transfer Denied April 20, 2010.

Edward D. Robertson, for Appellant–Respondent.

Nikki Cannezzaro, for Respondent–Appellant.

Before Court En Banc: THOMAS H. NEWTON, Chief Judge, JAMES E. SMART, JR., Judge, JOSEPH M. ELLIS, Judge, VICTOR C. HOWARD, Judge, LISA WHITE HARDWICK, Judge, JAMES E. WELSH, Judge, ALOK AHUJA, Judge, MARK D. PFEIFFER, Judge and KAREN KING MITCHELL, Judge.

JOSEPH M. ELLIS, Judge.

Lauren Wiley appeals the circuit court's entry of remittitur and final judgment in her negligence action against Ryland Homfeld, contending that the circuit court erred because: (1) it failed to give Ms. Wiley an opportunity to consent to remitti-tur or to request a new trial, and (2) it abused its discretion in remitting the jury's verdict. Mr. Homfeld cross-appeals claiming that the circuit court erred in permitting Dr. John Scowley to testify regarding Ms. Wiley's future medical expenses and in denying his motion for new trial. For the following reasons, the trial court's decision to remit the verdict is reversed, and judgment is entered in accordance with the jury's verdict.

On May 20, 2004, Ms. Wiley was driving her Ford Escort when she was struck by an eighteen-wheel truck and trailer driven by Mr. Homfeld, who had run a red light while talking on his cellular phone. Ms. Wiley sustained injuries to her back as a result of the collision.

Ms. Wiley subsequently filed a petition for damages in the Circuit Court of Ray County, and the case was tried by jury on November 26, 2007. At trial, Mr. Homfeld admitted liability, leaving only the issue of Ms. Wiley's damages. The jury ultimately rendered verdict in favor of Ms. Wiley for $400,000.

Mr. Homfeld filed a motion for new trial, judgment notwithstanding the verdict, and/or remittitur. Mr. Homfeld's motion for remittitur was based upon a claim of grossly excessive verdict. After a hearing, the circuit court denied the motions for new trial and judgment notwithstanding the verdict but ordered the jury's verdict remitted by $300,000 and entered judgment in favor of Ms. Wiley for $100,000. Ms. Wiley appeals, and Mr. Homfeld cross-appeals.

We first address Ms. Wiley's second point on appeal, wherein she contends that the circuit court abused its discretion in ordering remittitur. She argues that trial court improperly based its decision on a finding that no future medical expenses were established to a reasonable degree of

medical certainty and in refusing to consider her future medical expenses in assessing the nature and extent of her injury.

■ "The assessment of damages is primarily a function for the jury." *Scott v. Blue Springs Ford Sales, Inc.*, 215 S.W.3d 145, 180 (Mo.App. W.D.2006). "Missouri courts have consistently adhered to the rule that a verdict of a jury in assessing damages will not be disturbed unless it is grossly excessive or inadequate." *Barnett v. La Societe Anonyme Turbomeca France*, 963 S.W.2d 639, 656 (Mo.App. W.D.1997).

■ The trial court's authority to grant remittitur is established by § 537.068.[1] That statute only vests the trial court with discretion to remit a verdict if the evidence, viewed in the light most favorable to the verdict, does not support the amount awarded by the jury.[2] § 537.068. The trial court has no authority to alter the jury's verdict unless that threshold requirement is met.

■ Accordingly, when reviewing a trial court's grant of remittitur, an appellate court must first review whether the trial court had the statutory authority under § 537.068 to remit the jury's verdict. Entering remittitur where the jury's verdict is supported by the evidence would obviously be an abuse of discretion as it assumes authority not granted to the court by § 537.068. The only way to review the trial court's decision in this regard is to view the evidence in the light most favorable to the verdict, as the trial court was required to do in assessing whether the jury's verdict was supported by the evidence.[3]

This standard of review was utilized in the most recent, controlling case from the Missouri Supreme Court. In 1985, the Missouri Supreme Court abolished common law remittitur in *Firestone v. Crown Center Redevelopment Corp.*, 693 S.W.2d 99 (Mo. banc 1985). It did so, however, only after deciding Ms. Firestone's appeal, in which it reversed the trial court's grant of remittitur. *Id.* In its analysis of the propriety of the trial court's decision to remit, the Court cited with approval *Dodd v. Missouri–Kansas–Texas R. Co.*, 354 Mo.

---

1. All statutory references are to RSMo 2000 unless otherwise indicated.

2. While the dissent reads the language "evidence in support of the jury's verdict" to mean "all admissible evidence" or "all evidence available to the jury," there is no support for such an interpretation. The long line of cases cited by the dissent were all handed down before the practice of remittitur was abolished by the Missouri Supreme Court in *Firestone v. Crown Center Redevelopment Corp.*, 693 S.W.2d 99 (Mo. banc 1985). Although the legislature subsequently reinstated a form of remittitur, the whole of the common law was not incorporated in the statute. The legislature could easily have provided for the trial court to remit a verdict if "the admissible evidence" does not support the award but it chose not to incorporate such language in the statute.

3. The dissent incorrectly concludes that viewing the evidence in the light most favorable to the verdict renders the remittitur standard meaningless because it is then the same as the standard for directed verdict or judgment notwithstanding the verdict. To grant a directed verdict, before the case is submitted to the jury, the trial court does not consider the evidence in the light most favorable to the verdict because the case has yet to be submitted to the jury and there is no verdict. In granting a motion for directed verdict, the court considers the evidence in the light most favorable to the non-moving party. *Laws v. St. Luke's Hosp.*, 218 S.W.3d 461, 466 (Mo. App. W.D.2007). As noted by the dissent, the standard is the same for JNOV. This is not the same as viewing the evidence in the light most favorable to the verdict. Indeed, a verdict is not always favorable in all respects to any one party, and often neither party gets everything it wants.

1205, 193 S.W.2d 905, 907 (1946), and applied the teaching of Dodd in Ms. Firestone's case.[4] *Id.* at 108, 110.

Specifically, the Court in Firestone noted that it was for the jury to evaluate the credibility of conflicting expert testimony, and it viewed the evidence in the light most favorable to the jury's verdict. *Id.* at 108–110. Concluding its analysis, the Supreme Court stated that "[t]he jury is vested with a broad discretion in fixing fair and reasonable compensation to an injured party" and held that where the record contains evidence that would support the jury's award, "[s]uch a record does not authorize a trial court in the exercise of reasonable discretion to order any portion of it remitted." *Id.* at 109–110. For this reason, the Court found an abuse of discretion on the part of the trial court and restored the jury's verdict. *Id.* at 110.

The Supreme Court's citation to, and reliance on, Dodd is a clear rejection of *Steuernagel* and the other prior cases that had reviewed remittitur in the light most favorable to the trial court and, as such, has the effect of overruling them sub silentio. *Keller v. Marion County Ambulance Dist.*, 820 S.W.2d 301, 305 (Mo. banc 1991) (Recognizing that previous cases can be overruled sub silentio by subsequent decisions. "To the extent that this language constitutes the holding of Roberts, it has been overruled by this Court sub silentio in several cases."). The Court was clearly mindful of those cases at the time because one of its reasons for abolishing remittitur was because of the "problems and conflicting philosophies" exhibited by the courts of this State in addressing remittitur. *Firestone*, 693 S.W.2d at 110.

■■ Firestone is the most recent controlling decision of our Supreme Court on this issue. While Firestone abolished common law remittitur, the legislature adopted § 537.068 in 1987 creating a statute-based remittitur. "[T]he legislature is presumed to know the state of the law when enacting a statute." *Scoggins v. Timmerman*, 886 S.W.2d 135, 137 (Mo. App. W.D.1994). Common law rules remain in effect "[u]nless a statute clearly abrogates the common law either expressly or by necessary implication." *Mika v. Cent. Bank of Kansas City*, 112 S.W.3d 82, 90 (Mo.App. W.D.2003) (internal quotation omitted). If the legislature, in reinstating remittitur by statute, had intended to change the standard of review adopted and applied in Firestone, it could easily have done so. It did not. Accordingly, the standard of review currently applicable to cases appealing the grant of remittitur is that set out and applied in Firestone. " 'This court is constitutionally bound to follow the most recent controlling decision of the Missouri Supreme Court.' " [5] *Custer v. Hartford Ins. Co.*, 174 S.W.3d 602, 609 (Mo.App. W.D.2005) (quoting *Kinder*

---

4. In *Dodd v. Missouri–Kansas–Texas R. Co.*, 354 Mo. 1205, 193 S.W.2d 905, 907 (1946), the Missouri Supreme Court stated:

> The question of the amount of the damages in cases of this nature is primarily for a jury. Courts should not interfere unless a verdict is grossly excessive or inadequate. In considering the question of whether a verdict is excessive a court must take into consideration the plaintiff's evidence in its most favorable light to plaintiff. This for the reason that a jury has weighed the evidence and found in plaintiff's favor.

5. The dissent quotes extensively from *Steuernagel v. St. Louis Pub. Service Co.*, 361 Mo. 1066, 238 S.W.2d 426 (1951), and cites other cases of similar import in support of its position. While "the cases before 1985 interpreting remittitur remain helpful in interpreting § 537.068," *Bishop v. Cummines*, 870 S.W.2d 922, 924 (Mo.App. W.D.1994), as to the issue before us, the cases cited by the dissent have been effectively overruled.

*v. Mo. Dep't of Corr.*, 43 S.W.3d 369, 374 (Mo.App. W.D.2001) (citing Mo. Const. art. V, § 2)).

Subsequent to the enactment of § 537.068, the Eastern District of this Court utilized this approach in holding that a trial court abused its discretion in granting remittitur in *Crawford ex. rel. Crawford v. Shop 'N Save Warehouse Foods, Inc.*, 91 S.W.3d 646, 653 (Mo.App. E.D. 2002). The Eastern District viewed the evidence in the light most favorable to the verdict to determine whether the jury's award of future medical expenses was supported by substantial and competent evidence and held that the trial court erred in remitting the verdict where the evidence, so viewed, supported the jury's verdict. *Id.* at 653–54.

Similarly, in *Children International v. Ammon Painting Co.*, 215 S.W.3d 194, 199 (Mo.App. W.D.2006), this Court viewed the evidence in the light most favorable to the jury's award in assessing whether the trial court properly ordered remittitur. While noting that the amount of the overall verdict was supported by the evidence and would likely require holding that the entry of remittitur was an abuse of discretion had various aspects of the verdict not been itemized by the jury, we held that the trial court's remittitur of the amount specifically awarded for loss of use damages was proper because the record contained no evidence of such damages.[6] *Id.*

■ In the case at bar, reasonable minds could differ on the extent to which the need for future medical treatment was established by the evidence, and the trial court's decision could only be affirmed if the evidence is viewed in the light most favorable to the court's decision to remit. When the evidence is properly viewed in the light most favorable to the jury's verdict, that verdict is clearly supported by substantial evidence and is not against the weight of the evidence.

Dr. Scowley testified that the pain from the type of injury sustained by Ms. Wiley will progress as arthritis sets in to the injured area and "that there is a good medical certainty that she will require either intermittent epidurals, pain medi-

---

6. Were we to utilize the contrary approach and give deference to the manner in which the trial judge assessed credibility and weighed the evidence in determining whether he had the statutory authority to remit the verdict, it would lead to absurd results. We would effectively be reviewing the case as though it were a court-tried case and not a jury trial. Anytime a judge chose to remit a jury verdict, we would simply be reviewing the verdict entered by the trial court to see if it is supported by the evidence and is not against the weight of the evidence *with no regard for the jury's verdict.* We would effectively be granting the trial judge unfettered authority to enter a verdict in any amount within the range of evidence presented at trial anytime the judge so chooses in complete derogation of the jury's verdict. Such an approach would not only be erroneous, but contrary to existing case law, as noted *supra.*

By way of example, assume Defendant intentionally destroyed a painting owned by Plaintiff, and Plaintiff sued. Plaintiff's expert testified that the painting was worth $100,000. Defendant admitted liability but presented expert testimony that the painting was worth $75,000. The jury entered an award of $100,000. On a motion for remittitur, the trial court remitted to $75,000. Clearly, had the trial court properly viewed the evidence in the light most favorable to the jury verdict as required by statute, it could not have found the verdict was not supported by the evidence or that it had the statutory authority to remit. The jury verdict was clearly within the range of damages supported by the evidence. If, however, we were required to review the evidence in the light most favorable to the trial court's decision to remit, then we could not find that the trial court abused its discretion because there was evidence in the record that could support the lesser award entered by the court.

cations, anti-inflamatories, the whole gamut of treatment that will progress with her as she ages." He testified that the amount of treatment she would require would depend on how much she could tolerate the pain and that her yearly medical expenses could range from five hundred dollars for office visits and medicines to fifteen thousand a year if she requires epidurals. He noted that Ms. Wiley would most likely need to continue to see her doctor and chiropractor at the same rate she had been but that she would need to increase those visits as her condition worsened. He stated that testing in the form of CAT scans and/or MRI scans would add to the medical expenses. Dr. Scowley also testified that Ms. Wiley would benefit from one to two rounds of physical therapy per year if she was doing well and more if her condition worsened. He said that such therapy usually goes on for ten to fourteen days and costs two to three hundred dollars per visit. Dr. Scowley stated that "she'll have focalized periods of involvement just due to the nature of her injury with the facet arthropathy" and that "it's something that will be there and it may not require surgery and it might require surgery." He testified that Ms. Wiley would benefit from having epidurals in the future and the cost of each such procedure, though he could not quantify how many of these procedures she would require.

Properly viewed, the evidence presented at trial clearly supported the verdict rendered by the jury. Dr. Scowley's testimony reflects that, at a minimum, Ms. Wiley would require visits to the doctor and/or chiropractor, medication, and one or more sessions of physical therapy each year. Dr. Scowley's testimony reflects that these treatments would cost, in the aggregate, a minimum of $2,500 per year. Thus, the record established that Ms. Wiley had and would continue to have need of further medical treatment for her injury. Dr. Scowley also definitively stated that Ms. Wiley would require epidurals in the future. While he could not put a definite number on how many she would ultimately require, that testimony clearly supports a finding that she will require at least two such procedures. Accordingly, if the trial court found Dr. Scowley's testimony credible,[7] it erred as a matter of law in finding the testimony insufficient to establish to a degree of medical certainty that future medical expenses would be incurred. If, on the other hand, the trial court did not find Dr. Scowley's testimony credible, it erred as a matter of law in failing to view the evidence in the light most favorable to the verdict.

In either case, properly considering Dr. Scowley's testimony, in light of Ms. Wiley's 61–year life-expectancy, as established in the record, the proven minimum cost of her future medical treatment for the injury clearly exceeds the $100,000 verdict rendered by the trial court in doctor and chiropractor visits alone. Furthermore, Dr. Scowley's testimony established that Ms. Wiley would need MRIs and epidurals at some point in the future. In addition, the fact that Ms. Wiley might need additional treatment and/or back surgery could properly have been weighed by the jury in assessing the nature and extent of her injury as well as the pain and suffering she would experience as her condition worsened. The fact that her back injury carries with it a chance of requiring surgery in the future makes it a worse injury than a back injury with a lesser chance of future complications or one that had fully

---

**7.** The trial court made no express finding related to the credibility of the testimony of- fered by Dr. Scowley.

healed by the time of trial, a fact that should be considered by the jury in assigning a dollar value to her injury. *Swartz v. Gale Webb Transp. Co.*, 215 S.W.3d 127, 132–33 (Mo. banc 2007). Viewing the evidence in the light most favorable to the jury's verdict, we conclude that the record in this case supported the $400,000 verdict and that the trial court abused its discretion in finding to the contrary. In light of this holding, we need not address Ms. Wiley's remaining point on appeal.[8]

Mr. Homfeld's sole point in his cross-appeal contains multifarious claims of error and, accordingly, violates Rule 84.04. *Atkins v. McPhetridge*, 213 S.W.3d 116, 120 (Mo.App. S.D.2006). Despite this flagrant disregard of the rules, the policy of the appellate courts in this State is to decide a case on the merits rather than technical deficiencies in the brief. *Citizens Nat'l Bank v. Maries County Bank*, 244 S.W.3d 266, 272 n. 3 (Mo.App. S.D. 2008) (citing *Christeson v. State*, 131 S.W.3d 796, 799 n. 5 (Mo. banc 2004)). Because we are able to discern the claims being made and the defective nature of the point relied on does not impede our disposition of the case on the merits, we will exercise our discretion to attempt to resolve the issues on the merits. *Atkins*, 213 S.W.3d at 120. We will separate Mr. Homfeld's contentions, as best we can discern them, and respond to each one individually. *Chipperfield v. Mo. Air Conservation Comm'n*, 229 S.W.3d 226, 235 (Mo. App. S.D.2007).

■ In the first sub-point of his point relied on, Mr. Homfeld contends that Dr. Scowley's testimony indicating that Ms. Wiley would require future medical treatment should have been excluded from evidence because Ms. Wiley failed to list such

expenses in response to an interrogatory asking her to itemize any special damages she was seeking aside from lost earnings. Mr. Homfeld argues that he was unfairly surprised by this testimony and denied the opportunity to find an expert that would testify that Ms. Wiley would not need future treatment.

■ "The trial court has broad discretion to admit or exclude evidence," and "[w]e will affirm the trial court's decision absent a clear abuse of discretion." *Campbell v. Tenet Healthsystem, DI, Inc.*, 224 S.W.3d 632, 638 (Mo.App. E.D.2007). "This discretion extends to the trial court's choice of remedies in response to the non-disclosure of evidence...." *Wilkerson v. Prelutsky*, 943 S.W.2d 643, 647–48 (Mo. banc 1997). "A trial court will be found to have abused its discretion when a ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Swartz*, 215 S.W.3d at 130 (internal quotation omitted).

Regardless of whether Ms. Wiley should have listed expenses for future medical treatment as special damages in her answer to Mr. Homfeld's interrogatories, the trial court noted in deciding to allow the testimony that Mr. Homfeld was well aware that Dr. Scowley would testify about such expenses as a result of the testimony provided in Dr. Scowley's deposition during discovery. Because Mr. Homfeld learned of the testimony that would be offered through Dr. Scowley's deposition, we cannot say the trial court abused its discretion in denying Mr. Homfeld's motion to exclude the evidence at trial. *Campbell*, 224 S.W.3d at 639.

---

8. We gratuitously note that, where a trial court sustains a motion for remittitur, it must afford the affected party the option of electing to have a new trial instead of accepting judgment in the lesser amount. Rule 78.10(b).

■ In his next sub-point, Mr. Homfeld contends that Dr. Scowley's testimony related to future medical treatment should have been excluded from evidence because it did not have a sufficient evidentiary foundation. Mr. Homfeld argues that this testimony was used to establish future special medical damages and that such damages required evidence that they are reasonably certain to be incurred. He further claims that Dr. Scowley's testimony was too speculative and should have been excluded from evidence.

■ "It is Missouri's well-settled rule that a plaintiff is entitled to full compensation for past or present injuries that the plaintiff has shown by a preponderance of the evidence were caused by the defendant." *Swartz*, 215 S.W.3d at 130–31. "In accordance with this basic damage instruction, when an expert testifies to a reasonable degree of certainty that the defendant's conduct placed the plaintiff at an increased risk of suffering possible future consequences, Missouri courts have long held that such testimony is admissible to aid the jury in assessing the extent and value of the plaintiff's present injuries, even if those future consequences are not reasonably certain to occur." *Id.* at 131. For this reason, under Missouri case law, expert testimony is admissible where it addresses the probability, short of reasonable certainty, that future treatment may be necessary and of the potential cost of such treatment. *Id.*

Dr. Scowley testified to a reasonable degree of medical certainty that Ms. Wiley had a permanent condition that would require continued treatment and that this condition was going to worsen with age and require more extensive treatment. He described the various forms of treatment that might be required and the costs associated therewith. His testimony also reflects a minimum amount of medical treatment that she would require. Although he could not testify with certainty how much treatment Ms. Wiley would ultimately require because it would be dependent on her ability to tolerate pain, the speed with which her condition deteriorated, and the success of more conservative treatment, all of the testimony offered by Dr. Scowley on the subject of future medical treatment was properly admitted to allow the jury to assess the nature and extent of her injuries.[9] *Id.* at 130–31.

9. Dr. Scowley's actual testimony related to Ms. Wiley's future medical problems and treatments was as follows:

Q: Are there times, though, when the muscles don't heal?
A: Yes.
Q: And is that what we've got here?
A: Yes, sir.
. . . .
Q: Doctor, is it your testimony, are you telling the jury that Ms. Wiley would benefit from these [epidural] injections?
A: At some point, yes.
Q: And how many injections over what period of time?
A: That's difficult to ascertain. Depends on the degree of pain she has through the years.
. . . .
Q: What else do you believe might benefit Lauren in the future?
A: That's a very difficult question … I don't know exactly. I think she'll have problems for the rest of her life. I think that there's a good medical certainty that she will require either intermittent epidurals, pain medications, anti-inflamatories, the whole gamut of treatment that will progress with her as she ages.
. . . .
Q: How much, how often in the future is she going to have to see a doctor or a chiropractor?
A: Again, it varies on the degree of tolerability she has to pain.
Q: Is it going to be similar to what she's seeing a doctor and chiropractor for over the past?
A: Most likely. It may get worse as she goes on. Like I said, as the age on those bones, younger bones tolerate it better than older bones do.

In his final sub-point, Mr. Homfeld asserts that the trial court erroneously found that he had waived his claim of error related to Dr. Scowley's testimony in denying his motion for new trial. He contends that he made a continuing objection that sufficiently preserved his challenge to the evidence. As noted supra, the trial court did not err in admitting Dr. Scowley's testimony. Thus, regardless of whether Mr. Homfeld's objection was adequately preserved, the motion for new trial was properly denied. As none of the claims made in his point on cross-appeal have any merit, the point is denied.

For the reasons discussed herein, the trial court abused its discretion in ordering remittitur. The judgment of the trial court is reversed, and judgment is hereby entered in favor of Ms. Wiley in the amount of the original jury verdict, $400,000.00.

NEWTON, C.J., HOWARD, HARDWICK, PFEIFFER, and MITCHELL, JJ. concur.

AHUJA, J. concurs in result in separate opinion filed.

WELSH, J. dissents in separate opinion filed.

SMART, J. concurs in dissenting opinion.

ALOK AHUJA, Judge, Concurring.

I concur in the result.

Q: What do you anticipate the cost of seeing a doctor or chiropractor per year is going to be for this lady?
A: It can range anywhere from the, you know, five hundred to a thousand dollars for office visits, medications, too; so fifteen thousand dollars a year if she gets a set of epidurals.
Q: And does that include—that five hundred to a thousand dollars a year, does that include x-rays and testing?
A: No, sir.
Q: Or medicines?
A: It may include medicines but any testing's going to run it up. CAT scan is going to run a thousand or fifteen hundred, and that doesn't, the radiologists, MRIs will be slightly more.
. . . .
Q: Do you think she'll benefit from physical therapy?
A: Yes.
Q: How often will you send a person to physical therapy?
A: Again, it depends on severity during the year. If she has a good year, once or twice. If she has a bad year, possibly more.
Q: Physical therapy; and how long is physical therapy, a round of physical therapy?
A: Varies depends on the progress the therapists find at the time. Some are shorter; some are longer. Ten days, two weeks.
Q: And what is the cost of that?

A: Usually it's around two to three hundred dollars per visit would be my best estimation.
. . . .
A: Overall prognosis is the fact she'll probably have back pain intermittently for the rest of her life.
. . . .
Q: And in terms of need for any future medical care, if I understand your testimony, that may occur but only if her pain gets worse, fair statement?
A: It most likely will occur.
Q: But only if her pain gets worse?
A: Yes, sir.
Q: And you don't know with certainty what's going to happen to her down the road, true?
A: No, sir.
. . . .
Q: So is she going to have more arthritis than everyone else in this courtroom? If they have a normal amount, is she going to have more?
A: She'll have focalized periods of involvement just due to the nature of her injury with the facet arthropathy. Like I said, . . . it's something that will be there and it may not require surgery and it might require surgery.
. . . .
Q: She's going to have arthritis that she wouldn't have had; isn't that true?
A: Yes, sir.

The trial court granted Homfeld's motion for remittitur in the same order which also denies his new trial motion. Addressing the new trial issue, the order finds that Dr. Scowley's testimony concerning Wiley's need for future medical treatment, and the cost of that potential treatment, "was subject to conjecture and speculation." Further, by specifically noting that "Defendant's failure to object to the cost of the possible treatments waived any objection Defendant had thereto," the court suggests that, in its view, evidence of the cost of possible future treatments was erroneously admitted. Following this discussion, the court's order addresses Homfeld's alternative remittitur motion. Its brief discussion once again notes that "[n]o future medical expenses were established to a reasonable degree of medical certainty," referencing its earlier conclusion that Dr. Scowley's testimony concerning Wiley's future medical care was incompetent.

Homfeld's brief acknowledges that, in making its remittitur ruling, "the trial court disregarded [Dr. Scowley's] testimony [regarding plaintiff's claimed future medical needs and costs for such needs] based upon its finding that such testimony was subject to conjecture and speculation."

I believe that the trial court's failure to consider Dr. Scowley's testimony in assessing the reasonableness of the jury's damages award, standing alone, establishes that its remittitur ruling constituted an abuse of discretion, and that we need not defer to that ruling. As the majority notes, expert testimony concerning a personal injury plaintiff's increased risk of requiring particular future medical treatments, and the cost of those potential treatments, is admissible to prove the full extent of a plaintiff's compensable present injuries, even if the future treatments are not reasonably certain to occur. Moreover, the fact that the need for such treatments may depend on future developments (such as the success or failure of more conservative therapies) "'does not render the evidence ... inadmissible speculation and conjecture.'" *Swartz v. Gale Webb Transp. Co.*, 215 S.W.3d 127, 131–32 (Mo. banc 2007) (quoting *Bynote v. Nat'l Super Markets, Inc.*, 891 S.W.2d 117, 125 (Mo. banc 1995)).

Whether or not Dr. Scowley's testimony rose to the level of certainty necessary for Wiley to recover the costs of any possible future medical treatments themselves, *see Seabaugh v. Milde Farms, Inc.*, 816 S.W.2d 202, 210–11 (Mo. banc 1991), I agree with the majority that his testimony concerning Wiley's potential need for such treatments was admissible under *Swartz* and similar cases. Yet the trial court wholly disregarded that testimony in making its remittitur ruling, based on the erroneous view that Dr. Scowley's testimony constituted incompetent "conjecture and speculation."

Whatever the full scope of a trial court's discretion in remitting a jury's damages award, and whatever degree of deference we may owe its decision, at a minimum a trial court abuses its discretion where its action is based on a material error of law. *See, e.g., Dick v. Children's Mercy Hosp.*, 140 S.W.3d 131, 137 & n. 3 (Mo.App. W.D. 2004). The remittitur ruling here is based on just such an error. I accordingly concur in the majority's conclusion that the trial court abused its discretion, although I find it unnecessary to address the broader issues the majority and dissenting opinions so thoughtfully explore.

JAMES EDWARD WELSH, Judge, dissenting.

The Missouri Supreme Court once before attempted to abolish the doctrine of remittitur, but the Missouri legislature made it clear that remittitur is a viable

doctrine by its enactment of section 537.068, RSMo, in 1987. The majority opinion in this case, however, attempts to emasculate the doctrine and render it meaningless. I, therefore, respectfully dissent.

To read the statutory language of section 537.068, RSMo 2000, that "[a] court may enter a remittitur order if, after reviewing the evidence in support of the jury's verdict, the court finds that the jury's verdict is excessive," as saying the court may only remit a verdict if the evidence, viewed in the light most favorable to the verdict,[1] does not support the amount awarded, is to do violence to the statutory language. It adds words that are simply not there. It also conflates two different functions of the trial judge. One function is to serve as a gatekeeper for the jury and eliminate claims not supported by the evidence by using the "most favorable review" in ruling a motion for directed verdict or, failing that, using that standard retrospectively in ruling a motion for judgment *nil obstat verdict* (JNOV). This is a legal determination and reviewed *de novo*. A separate function with a different standard is the trial judge's obligation to weigh the evidence to insure it is not excessive or inadequate. This is a factual determination entitled to deference by a reviewing tribunal. To adopt the standard applicable to a JNOV is to eliminate the remittitur function as any verdict not set aside as unsupported by the evidence passes the new remittitur standard. Such an interpretation of section 537.068 renders it meaningless and would abrogate remittitur as a viable function of the trial court.

Section 537.068, RSMo 2000, authorizes a court to "enter a remittitur order if, *after reviewing the evidence in support of the jury's verdict*, the court finds that the jury's verdict is excessive because the amount of the verdict exceeds fair and reasonable compensation for plaintiff's injuries and damages." The circuit court has broad discretion in ordering remittitur and ought not to be reversed except for abuse of that discretion. *Lay v. P & G Health Care, Inc.*, 37 S.W.3d 310, 333 (Mo. App.2000).

This court has previously addressed the appropriate review in *Massman Construction Co. v. Missouri Highway & Transportation Commission*, 948 S.W.2d 631, 633 (Mo.App.1997), where we held "[a] circuit court's granting additur[2] is equivalent to granting a new trial on the ground that the verdict is against the weight of the evidence."[3] This holding was in the context of whether a circuit court must give reasons for granting additur which we found was unnecessary because there is no such requirement when granting a new trial. *Id.* As such, the review from the granting of a new trial should be applicable to the present case. We have held that in reviewing a grant of new trial as against the weight of the evidence, "[w]e will view all inferences and evidence in the light most favorable to the trial court's decision." *Laws v. St. Luke's Hosp.*, 218 S.W.3d 461, 467–68 (Mo.App.2007) (citing *Dick v. Children's Mercy Hosp.*, 140 S.W.3d 131, 136 (Mo.App.2004)).

1. Presumably, the court would also ignore all evidence to the contrary.

2. "The doctrine of additur is a corollary of remittitur, and encompasses the same principles, therefore it may be analyzed in the same way." *Boney v. Worley*, 261 S.W.3d 641, 649 (Mo.App.2008).

3. *See also Fust v. Francois*, 913 S.W.2d 38, 49 (Mo.App.1995) ("The trial court's reduction of the jury award by remittitur constitutes a ruling upon the weight of the evidence.").

Indeed, this was the standard of review employed in cases when the doctrine of remittitur was grounded in our common law. In *Steuernagel v. St. Louis Public Service Co.*, 361 Mo. 1066, 238 S.W.2d 426 (1951), the Missouri Supreme Court noted:

The rule applicable here is that when a trial court grants a new trial on the ground of excessiveness (or inadequacy),[4] it is equivalent to granting a new trial on the ground that the verdict is against the weight of the evidence. The trial court is allowed a wide discretion in granting a motion for a new trial and this is particularly so where the court has ruled the motion upon the amount of the verdict, and thus, upon the weight of the evidence. In considering the size of the verdict herein, the trial court had the right to weigh the evidence. To do so, the trial court could take into consideration all of the evidence pertaining to plaintiff's injuries and physical condition and not merely plaintiff's evidence which was most favorable. The trial court had the right to consider and weigh the conflicting evidence offered by defendant and to evaluate all of the evidence in the light of the trial court's opportunity to see, hear and observe plaintiff and the various witnesses who testified. This is an important function of the trial court. We could not properly determine the propriety of the trial court's action by applying a different rule or test—by considering only plaintiff's evidence in its light most favorable to her. While an appellate court should not undertake to weigh the evidence on the issue of plaintiff's damages, it should examine the record to determine whether there is substantial evidence supporting the view that plaintiff's injuries were less serious and disabling than claimed by plaintiff,

or that some of her physical infirmities did not result from the accident she suffered. *If the evidence viewed in the light most favorable to upholding the ruling of the trial court* does afford reasonable and substantial support for the trial court's order or remittitur, then there could be no abuse of discretion and the trial court's action must be sustained.

*Id.* at 431 (citations omitted and emphasis added). *See also Morris v. Israel Bros., Inc.,* 510 S.W.2d 437, 447–48 (Mo.1974); *Combs v. Combs,* 295 S.W.2d 78, 80 (Mo.1956); *Wilhelm v. Haemmerle,* 262 S.W.2d 609, 612–13 (Mo.1953); *Wicker v. Knox Glass Assocs.,* 362 Mo. 614, 242 S.W.2d 566, 569 (1951); *P & S Leasing Co. v. Ray Smith Ford, Inc.,* 553 S.W.2d 733, 734 (Mo.App.1977); *Best v. Fred Weber Constr. Co.,* 525 S.W.2d 102, 106 (Mo.App.1975); *Davis v. Perkins,* 512 S.W.2d 868, 874–75 (Mo.App.1974); *Pisha v. Sears Roebuck & Co.,* 496 S.W.2d 280, 284 (Mo.App.1973); *Bell v. Bell's Estate,* 368 S.W.2d 544, 545–46 (Mo.App.1963); *Moore v. Glasgow,* 366 S.W.2d 475, 481–82 (Mo.App.1963).

I recognize that the Missouri Supreme Court abrogated the doctrine of common law remittitur in *Firestone v. Crown Center Redevelopment Corp.,* 693 S.W.2d 99 (Mo. banc 1985). The *Firestone* court concluded that the evidence in the case substantiated the jury's award and that the record did not authorize the circuit court "in the exercise of reasonable discretion to order any portion of it remitted." *Id.* at 110. The Supreme Court, therefore, abrogated the doctrine of remittitur in *Firestone* because it believed that it was the

4. The circuit court in Wiley's case did not grant a new trial in this case but ordered the verdict remitted. The court in this case should have afforded Wiley the option of accepting the remitted amount or having a new trial. Rule 78.10(b).

jury's responsibility to weigh the evidence and not the courts. *Id.*

The Missouri legislature, however, disagreed with the Supreme Court's decision in *Firestone* and reinstated remittitur by enacting section 537.068 in 1987. "When the legislature restored the remittitur doctrine, its design was to establish equitable compensation and to eliminate, to the extent possible, the retrial of lawsuits." *Bishop v. Cummines,* 870 S.W.2d 922, 924 (Mo.App.1994). *Firestone,* therefore, is no longer instructive regarding remittitur cases, and it is disingenuous to contend that it somehow controls the resolution of this case. The *Firestone* opinion has been superseded by section 537.068, and we are not constitutionally bound to follow an opinion of the Missouri Supreme Court that is no longer good law. To cling to the rationale of *Firestone* after the doctrine of remittitur was reinstated is just illogical. Moreover, that *Firestone* may have disapproved of prior remittitur cases decided by the courts and may have wanted to over-rule them *sub silentio* does not matter in light of the legislature's enactment of section 537.068. Therefore, the cases interpreting remittitur prior to *Firestone* remain helpful in interpreting section 537.068. *Bishop,* 870 S.W.2d at 924.

In enacting section 537.068, the legislature instructed that remittitur is proper only where "after reviewing the evidence in support of the jury's verdict, the court finds that the jury's verdict exceeds fair and reasonable compensation for plaintiff's injuries and damages." The legislature did not say that the circuit court may remit a verdict if the evidence, **viewed in the light most favorable to the verdict,** does not support the amount awarded by the jury. The unstated result of such a review is that evidence unfavorable to the verdict is ignored. This is the antithesis of weighing the evidence. This is not, however, what the legislature said or intended. Section 537.068 merely requires the circuit court to review the evidence in support of the jury's verdict.[5] This exercise still al-

5. In *Crawford ex rel. Crawford v. Shop 'N Save Warehouse Foods, Inc.,* 91 S.W.3d 646, 653 (Mo.App.2002), the circuit court reviewed the evidence in support of the jury's verdict and ordered the verdict remitted. On appeal, the Eastern District found that, "[g]iven the lasting trauma and continuing medical care that both parties testif[ied] that [the plaintiff] require[d]," the circuit court abused its discretion in granting the motion for remittitur. *Id.* at 654. In so ruling, the *Crawford* court never said that it was viewing the evidence in the light most favorable to the verdict. The same is true of this court's decision in *Children International v. Ammon Painting Co.,* 215 S.W.3d 194 (Mo.App.2006). In that case, the court held:

The jury had no evidence to find the Plaintiff suffered $892,000 of loss-of-use damages. Moreover, no reasonable juror could have categorized the $200,000 attributable to the diminishing value of the dollar to loss of use of the press.... [T]he jury made a finding in respect to the loss-of-use damages which was glaringly unwarranted by the evidence. Had the jury placed the $200,000 in the damage-to-property category, ample evidence would have supported the verdict. Had there been a non-itemized verdict and the jury returned the same amount but in gross, there would have been ample evidence to support the verdict. However, the jury found that the Plaintiff suffered $200,000 more in damages for the loss of use of its press than any evidence tended to show. To hold otherwise would be to disregard the explicit decision of the jury and rely on mere speculation. The trial court did not abuse its discretion in remitting $200,000 of the loss-of-use damages.

*Id.* at 202. In so ruling, the Children International court did not say that it was viewing the evidence in the light most favorable to the verdict. Indeed, both of these cases merely cite the standard provided for in section 537.068, that the circuit court may grant remittitur if, after reviewing "the evidence in support of the jury's verdict," the court finds that "the jury's verdict exceeds fair and reasonable compensation for plaintiff's injuries and damages."

lows the circuit court to weigh the conflicting evidence and evaluate all of the evidence in light of its opportunity to see and hear all of the witnesses.

Indeed, in *Barnett v. La Societe Anonyme Turbomeca France*, 963 S.W.2d 639, 656 (Mo.App.1997), this court recognized, "The trial court has broad discretion in ordering remittitur because the ruling is based upon the weight of the evidence, and the trial court is in the best position to weigh the evidence." Moreover, in *McCormack v. Capital Electric Construction Co.*, 159 S.W.3d 387, 401 (Mo.App. 2004) (citation omitted), this court acknowledged:

> As compared to our review of the record, the trial court was in the best position to observe this evidence and evaluate credibility. Under our standard of review, "[t]he trial court's superior vantage point warrants a great latitude of discretion in determining whether and to what extent the verdict was supported by the evidence." We must defer to the trial court's exercise of discretion unless the remitted judgment is manifestly unjust.

Thus, remittitur is a ruling based upon the weight of the evidence, and those cases analyzing the common law doctrine of remittitur are still applicable today. *Bishop*, 870 S.W.2d at 924. Indeed, we can presume the legislature knew the state of the law at the time it enacted section 537.068, *Scoggins v. Timmerman*, 886 S.W.2d 135, 137 (Mo.App.1994), and obviously the Legislature intended to reinstate remittitur as it existed (with perhaps an even clearer standard as *Firestone* indicated was absent at common law).

It is undisputed that the trial judge could have granted a new trial as against the weight of the evidence. In that case, this court could not substitute its judgment for that of the trial judge because the trial court was in the best position to make that determination.[6] But here, where the trial judge makes the same determination and, in accordance with the statutory purpose of section 537.068, remits a portion of the verdict with the object to avoid the expense and delay of a new trial, the majority would adopt a different standard of review. Absent a showing of prejudice, every excessive or inadequate verdict ought not to result in a new trial. It should result in remittitur or additur by the trial judge subject to a party's right to opt for a new trial. We should review the judgment entered for abuse of discretion. We ought not ignore the judgment of the trial court and put ourselves in the position of the trial judge (without the benefit of seeing and hearing the witnesses but on the cold record before us) and determine *de novo* if the verdict is excessive or inadequate.

Therefore, in reviewing the action of the circuit court, this court does not weigh the evidence but merely examines the record to determine whether there is substantial evidence to support the circuit court's ruling. "If the evidence, viewed in the light most favorable to the ruling of the trial court, affords reasonable and substantial support for the ruling, then it must be affirmed." *Best*, 525 S.W.2d at 106. As this court's Southern District said in *P & S Leasing Co. v. Ray Smith Ford, Inc.*, 553 S.W.2d 733, 734 (Mo.App.1977) (citations and internal quotation marks omitted):

**6.** "[T]rial courts have broad discretion to grant a new trial because the verdict was against the weight of the evidence. We will review the grant of a new trial on such a basis only if there has been a manifest abuse of discretion, because the trial court is in a better position to weigh the evidence. Such grants are more likely to be upheld than denied." *Boney*, 261 S.W.3d at 648 (citation omitted).

If the evidence, viewed in the light most favorable to the ruling, affords reasonable and substantial support for it, then it must be sustained.... It is only where the trial court has abused its discretion in ordering a remittitur, ... or in the amount of the remittitur ordered, that a judgment is reviewable by this court. [W]hen the trial court ... actually considers the matter of the excessiveness of the verdict and, by ordering a remittitur, gives an affirmative expression of its own considered view as to what the size of the verdict should be, the appellate court, while concededly not bound by the trial court's action, nevertheless accords it very great weight, and indeed regards it as so strongly persuasive that except in a case which calls unmistakably for a greater reduction, the judgment left to stand by the trial court will not be disturbed on appeal.

The ultimate test, therefore, in determining whether the circuit court abused its discretion is whether the award compensates the plaintiff fairly and reasonably for the sustained injuries. *Alcorn v. Union Pac. R.R. Co.*, 50 S.W.3d 226, 249–50 (Mo. banc 2001). In making the determination the following factors are considered: loss of present and future income, medical expenses, the plaintiff's age, the nature and extent of the plaintiff's injuries, economic considerations, awards given and approved in comparable cases, and the superior opportunity for the jury and the circuit court to evaluate the plaintiff's injuries and other damages claimed. *Othman v. Wal–Mart Stores, Inc.*, 91 S.W.3d 684, 687 (Mo.App. 2002).

It is important to notice that the case law does not only accord deference to the jury's superior opportunity to evaluate plaintiff's damages but also recognizes the trial judge's advantages in evaluating plaintiff's damages. The issue regarding the proper standard of review then dissolves into a single determination of who is in the better position to determine whether the jury's verdict is against the weight of the evidence, this court on the record before us or the trial judge who presided over the trial. It is difficult to justify substituting the judgment of judges who review the evidence on the cold, impersonal record for that of the judge who presided over the trial and heard and observed the witnesses and parties during the trial.

In ruling on Homfeld's motion for new trial, judgment notwithstanding the verdict, and/or remittitur, the circuit court stated:

> At trial, Dr. Scowley testified to a reasonable degree of medical certainty that Plaintiff would have future pain and problems with her back. He further testified as to different possible medical procedures that she might receive to help her with her pain. However, Dr. Scowley failed to testify to a reasonable degree of medical certainty which one, if any, Plaintiff would need nor the length of any such treatment. Dr. Scowley then testified without objection to the cost of the possible medical procedures.

> Dr. Scowley's testimony as to future complications and type of treatment was relevant to establish Plaintiff's claims for future damages. However, Dr. Scowley testified that it was difficult to determine the number of injections and the period of time that any injections would be needed. Also, Dr. Scowley could not specify the number of times Plaintiff would have to consult a doctor or a chiropractor.

> The Court finds that the cost and need for future medical specials were

not established to a reasonable degree of medical certainty and the cost and need was subject to conjecture and speculation.

Although Dr. Scowley testified to a reasonable degree of medical certainty that Wiley would have future pain and problems with her back, on cross-examination Dr. Scowley said that Wiley had a good prognosis but would have intermittent pain. Further, the following exchange took place:

[DEFENDANT'S ATTORNEY:] Okay. And in terms of need for any future medical care, if I understand your testimony, that may occur but only if her pain gets worse, fair statement?

DR. SCOWLEY: It most likely will occur.

DEFENDANT'S ATTORNEY: But that's only if her pain gets worse?

DR. SCOWLEY: Yes, sir.

DEFENDANT'S ATTORNEY: And you don't know with certainty what's going to happen to her down the road, true?

DR. SCOWLEY: No, sir.

The circuit court found this evidence to be speculative and too subject to conjecture to be worthy of belief and support an award of future medical damages and concluded any award of future damages was against the weight of the evidence. The circuit court found that future medicals were not *established* to a reasonable degree of medical certainty. Although the circuit court found that Dr. Scowley testified to a reasonable degree of medical certainty that Wiley would have future

pains and problems with her back, the circuit court found that the cost of the different medical procedures was subject to conjecture and speculation, and therefore, the jury's award for future damages was against the weight of the evidence and excessive. Further, the circuit court set out specific findings regarding the uncertainty surrounding the need of treatment, which treatment, and the duration of any treatment. The circuit court noted that Dr. Scowley's testimony left open the issue of whether Wiley would need any of the procedures. The circuit court concluded that the jury made an honest mistake in weighing the evidence as to the nature and extent of the injury and in awarding disproportionate damages to Wiley.

After a review of the record, employing the standard of review which allows the circuit court to weigh the conflicting evidence and evaluate all of the evidence in light of its opportunity to see and hear all of the witnesses, I cannot conclude that the remitted verdict is manifestly unjust.[7] "A trial court abuses its discretion when its ruling shocks the sense of justice, shows a lack of consideration, and is obviously against the logic of the circumstances. A trial court does not abuse its discretion if reasonable persons could differ on the propriety of the court's decision." *Burrows v. Union Pacific R.R. Co.,* 218 S.W.3d 527, 533 (Mo.App.), *cert. denied,* 552 U.S. 889, 128 S.Ct. 294, 169 L.Ed.2d 150 (2007) (citations omitted). The circuit court's finding was not an abuse of discretion as reasonable minds could differ over whether the need for future medical procedures was established. Indeed, the majority even states that "rea-

---

7. Had I been the trial judge, it is unlikely I would have concluded that the verdict should have been remitted, but such ought not to be the appropriate standard of review on a fact driven issue.

sonable minds could differ on the extent to which the need for future medical treatment was established by the evidence." *See* Maj. Op. 150. That reasonable minds can differ by definition cannot be an abuse of discretion. It cannot be said that the circuit court's decision was contrary to the logic of the situation, especially when viewed in the light most favorable to the trial judge's decision.[8]

The circuit court determined that no future medical expenses were established to a reasonable degree of medical certainty and that the jury made an honest mistake in weighing the evidence as to the nature and extent of Wiley's injuries. As such, remittitur or a new trial was necessary. *Horizon Memorial Group, L.L.C. v. Bailey,* 280 S.W.3d 657, 672 (Mo.App.2009). If the circuit court sustains a motion for remittitur, it must also afford the affected party the option to file an election of a new trial. Rule 78.10(b). The circuit court did not afford Wiley the option of accepting the remitted amount or having a new trial. I would, therefore, reverse the circuit court's judgment and remand with instructions that the circuit court amend its judgment and afford Wiley the option of filing an election of a new trial.

---

**8.** Even if this court did not accord any deference to the circuit court and reviewed the circuit court's decision *de novo,* if reasonable minds could differ on the issue it cannot be said the circuit court abused its discretion.